[Crim. No. 3122. First Dist., Div. One. Nov. 22, 1955.]

THE PEOPLE, Respondent, v. JOSEPH GODFREY MOORE, Appellant.

Albert T. Shine, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, John S. McInerny, Deputy Attorney General, J. F. Coakley, District Attorney (Alameda County) and Robert L. Anderson, Deputy District Attorney, for Respondent.

PETERS, P. J.—Defendant, by information, was charged with having violated section 647a, subdivision (1), of the Penal Code. The charge was that on June 23, 1954, he did "annoy and molest" a small girl, and that he had previously been convicted of a similar charge under the same section in Los Angeles County.

Section 647a, subdivision (1), reads: "Every person who annoys or molests any child is a vagrant and is punishable upon first conviction by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months or by both such fine and imprisonment and is punishable upon the second and each subsequent conviction by imprisonment in the state prison not exceeding five years."

The purpose of the section is clear. In *People* v. *Pallares,* 112 Cal.App.2d Supp. 895, at page 900 [246 P.2d 173], this purpose was expressed as follows: "The object of the enactment of the code section was the protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter. It is common knowledge that the subject of sex offenders, and particularly the protection of the young from improper advances, has in recent years engaged the close attention of the Legislature and of the general body of the citizens of this state."

At page 901 the proper interpretation of the section was given by the court as follows:

"It seems equally clear that the meaning of the words 'to annoy or molest,' as employed in the code section, is sufficiently definite and certain to advise the public generally what acts and conduct are prohibited. Annoy means to disturb or irritate, especially by continued or repeated acts; [citations] 'to weary or trouble; to irk; to offend; to disturb or irritate, esp. by continued or repeated acts; to vex; to molest . . . harm; injure' (Webster's New Internat. Dict. 2d ed.).

"The same dictionary defines 'molest' as, 'to interfere with or meddle with unwarrantably so as to injure or disturb.' Molest is, in general, a synonym for annoy. The term 'molestation' always conveys the idea of some injustice or injury. Molest is also defined as meaning to trouble, disturb, annoy or vex. [Citation] . . .

"When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender.

Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children. ▌ It should be noted further that the section must be construed reasonably as setting up an objective test for annoyance or molestation; . . . The annoyance or molestation which is forbidden is in no sense a purely subjective state on the part of the child. The objectionable acts of a defendant constitute the annoyance or molestation contemplated by the statute. [Citation.]''

This case was approved in *People* v. *McNair,* 130 Cal.App. 2d 696 [279 P.2d 800]. After quoting with approval from the Pallares case, *supra,* the court stated (p. 697): ''It is also settled that the element of annoyance as provided in section 647a, subdivision (1) of the Penal Code is not concerned with the state of mind of the child. It is the objectionable acts of the defendant which constitute the offense. (*People* v. *Pallares, supra,* 901, 902.) If the conduct of a defendant is so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would 'annoy or molest' within the purview of section 647a, subdivision (1), Penal Code. [Citations.]''

The main contention of defendant is that the evidence does not support the finding that he performed any acts with the intent to ''annoy'' or ''molest'' the child within the meaning of section 647a, subdivision (1), of the Penal Code as interpreted in these two cases. This requires an examination of the record. Before summarizing the evidence, however, it seems necessary to call attention to the well settled but often overlooked rule that on such an appeal the appellate court must view the evidence in the light most favorable to the prosecution. If there is any substantial evidence or reasonable inferences from that evidence to support the judgment the appellate court must affirm. (*People* v. *Pianezzi,* 42 Cal.App.2d 265 [108 P.2d 732].) In *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], the Supreme Court restated this rule in the following language: ''The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are

established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. [Citations]."

The trial judge charged the jury as to the elements of the offense as set forth in the Pallares and McNair cases, *supra,* both as to the overt acts and the intent required to constitute the offense charged. The instructions told the jury what is necessary to constitute "annoying" or "molesting," and stated that the challenged conduct must be motivated by an abnormal or unnatural sexual interest or intent before a conviction was justified. The basic question is whether the evidence, tested by the standards set forth in the Newland case, *supra,* supports the implied findings of the jury that such acts were committed by defendant with the required intent.

The sufficiency of the evidence turns upon the credibility of one witness—a Mrs. Dotson. A review of the evidence follows:

The child affected was M.K., a girl 8 years old, who lived with her parents in Berkeley. The defendant was employed by a social service organization to solicit contributions for the agency. The child first met defendant on June 20, 1954, while playing in the driveway next to her home. She testified that defendant then appeared quite friendly, and that they had a discussion about the ball with which she was playing. On the next day, June 21, 1954, defendant again visited the area and had a small ball attached to a string which he told M.K. that he would give to her, but did not do so. On this occasion defendant solicited at the home of M.K. for funds for the agency for which he was collecting. On June 23, 1954, defendant again returned to the area to solicit funds. M.K. was then playing with another little girl and boy in a garden adjoining the home of a Mrs. Lott,

who was a neighbor of the parents of M.K., and who cared for the child during the day when the mother of M.K. worked. The child testified that she accompanied defendant to the house next to Mrs. Lott's because she wanted the ball he had promised; that when they got to the top of the stairs defendant picked her up and they had a discussion about her weight; that when the occupant of the house came to the door defendant put her down and solicited a contribution; that she then accompanied defendant to the porch of Mrs. Lott's house where defendant again picked her up and they again discussed her weight; that when Mrs. Lott came to the door defendant put her down. Defendant then solicited a contribution from Mrs. Lott. The child testified that, although she had not asked defendant to pick her up, at no time did he hurt her.

So far, the testimony shows nothing but friendly non-criminal activity on the part of defendant. The prosecution sought to show criminality by the testimony of Mrs. Dotson. Her house was so located that from her kitchen window she could clearly see the garden where M.K. was playing with other children, the stairway of the large house next to Mrs. Lott's, and Mrs. Lott's front porch. The distance from her kitchen window to the stairway of the large house was about 100 feet, and the distance to the front porch of the Lott house slightly less. Mrs. Dotson testified that from her kitchen window on June 23d she observed M.K. playing in the garden; that she saw defendant approach the child and bring out a ball on a string; that she saw defendant and M.K., hand in hand, ascend the stairway of the house next to Mrs. Lott's; that she saw defendant pick M.K. up, place his hands under her buttocks and then move the front of her body up and down against the front of his body; that the two then descended the stairway and proceeded to the porch of Mrs. Lott's house; that again defendant picked M.K. up, put his hands on her buttocks, pulled her to him, and, with her legs around his hips, moved her up and down against his body; that defendant then put M.K. down and rang Mrs. Lott's doorbell; that both M.K. and defendant were fully clothed during these maneuvers, and that no attempt was made by defendant to remove any of his own clothing or that of the child. Mrs. Dotson testified that she then went over to Mrs. Lott's house to tell her what she had seen, passing defendant on the way, and reported to Mrs. Lott. Mrs. Lott testified that when she heard the first part of Mrs. Dotson's story she called to defendant who was in

front of the house and asked him if he knew M.K. The defendant volunteered the statement: "I don't know what this lady told you but I was only playing with the child," and stated that he knew the child and named the street upon which M.K. lived. Mrs. Lott then ordered defendant not to play with the child and turned to hear the balance of Mrs. Dotson's story. After hearing it, she again went out to find defendant, but by this time he had disappeared.

This is substantially the evidence relied upon by the prosecution to support the conviction. Defendant did not take the stand. After the jury brought in its verdict, the trial court, acting under the provisions of section 5501 of the Welfare and Institutions Code, suspended the imposition of sentence and ordered defendant to a state hospital for a 90-day observation and determination as to whether he was a sexual psychopath. The hospital certified that he was not, and the trial court so found, denied probation and imposed sentence. Defendant, in propria persona, appealed from the judgment and from the order denying his motion for a new trial. He then filed an opening brief in propria persona, but after the filing of respondent's brief requested the appointment of counsel. The request was granted and since that time appellant has been ably and diligently represented by a court-appointed lawyer who was granted permission to, and did, file a supplemental opening brief on behalf of his client.

Insofar as the sufficiency of the evidence is concerned, it is obvious that the jury believed the testimony of Mrs. Dotson, and inferred from that testimony that the acts were motivated by an abnormal sexual desire. The jury was told that, in this type of accusation, since it is easily made and difficult to disprove, the testimony of Mrs. Dotson should be viewed with caution. Under these circumstances, it cannot be said that the jury was without power to believe the testimony of Mrs. Dotson. Certainly her testimony was not inherently improbable. It is equally clear that the inference involved is a reasonable one. This being so, under the rule announced in *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778], this court is without power to disturb the verdict. (See also *People* v. *Pettis,* 95 Cal.App.2d 790 [213 P.2d 731].) This is particularly true in a case where the defendant at the trial failed to dispute the evidence in any way. ■ Appellant does attach to his brief filed in propria persona a statement setting forth his side of the story. Obviously, if

appellant wanted this evidence considered he should have presented it to the jury. He elected, as he had a right to do, not to do so. But he cannot on appeal now get his story before an appellate court. (*People* v. *Collins*, 117 Cal.App.2d 175 [255 P.2d 59]; *People* v. *Ruiz*, 103 Cal.App.2d 146 [229 P.2d 73].) ■ Equally without merit is appellant's attempt to attack the validity of the prior conviction on the ground that the arrest there involved was illegal. The facts relied upon are *dehors* the record and cannot be considered.

■ The fact that the child did not testify that she was "annoyed" or "molested" is not fatal to the prosecution's case. As was pointed out in *People* v. *McNair*, 130 Cal.App. 2d 696 [279 P.2d 800], the test is an objective and not a subjective one. The testimony of Mrs. Dotson was sufficient to show the overt act, and the sex intent is reasonably inferred from her testimony.

■ It is true that the record discloses a few minor discrepancies in the testimony of the various witnesses. The charged discrepancies were all as to minor matters. Certainly these discrepancies were normal and do not raise the slightest suspicion that the testimony of any witness was fabricated or was inherently improbable. These discrepancies were matters for the jury to consider and are not relevant to this appeal. (*People* v. *Skaggs*, 80 Cal.App.2d 83 [181 P.2d 390]; *People* v. *Alexander*, 92 Cal.App.2d 230 [206 P.2d 657].)

Appellant charges the prosecuting attorney with prejudicial misconduct in several respects. It is charged that the prosecutor stated in his argument that defendant's failure to take the stand created a presumption of guilt. There is no such statement in the record. ■ The prosecutor, of course, had a right to comment on the failure of defendant to take the stand. (*People* v. *Adamson*, 27 Cal.2d 478 [165 P.2d 3].) The record shows that the prosecutor commented on such failure, and properly stated that, since defendant had not contradicted the prosecution's witnesses, such testimony stood uncontradicted in the record, and that from this fact the jury could infer that such witnesses told the truth. This was proper. A careful reading of the balance of the prosecution's argument shows nothing even approaching improper argument, far less anything prejudicial.

■ The appellant also complains of certain statements made by the prosecuting attorney at the time of the sexual psychopath hearing. These statements were made after the conviction by the jury, and so, of course, could not have affected that verdict. Moreover, the trial judge found that

defendant was not a sexual psychopath, so the challenged statements could not have affected the trial judge.

Counsel for appellant makes the argument that prejudicial error was committed by the trial court in improperly referring to the prior conviction. Of course, it is error of a most serious type for the prosecution or the court to refer to a prior conviction, unless relevant for impeachment purposes in cases where defendant testifies. (*People* v. *Sansome,* 84 Cal. 449 [24 P. 143] ; *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924] ; *People* v. *Stoddard,* 85 Cal.App.2d 130 [192 P.2d 472].) It is this rule upon which appellant relies.

 It will be remembered that the offense here involved is a felony only if the accused has suffered a prior conviction under the same section. Section 1025 of the Penal Code provides that where the defendant admits the charged prior ''the charge of the previous conviction must not be read to the jury, nor alluded to on the trial.'' Section 1093, subdivision (1), of the Penal Code requires, in felony cases, that the clerk must read the indictment or information to the jury ''and in cases where it charges a previous conviction, and the defendant has confessed the same, the clerk in reading it shall omit therefrom all that relates to such previous conviction.'' It is appellant's contention that these sections were violated by the court clerk in reading the charge. The clerk properly omitted the portion of the charge referring to the previous conviction, but did read that appellant was accused ''of a *felony,* to wit, a violation of Subdivision 1 of Section 647a of the Penal Code.'' The ingenious argument is made that because a violation of section 647a, subdivision (1), can only be a felony if there has been a prior conviction under the section, the mere reference to the offense being a ''felony,'' necessarily told the jury that there had been a prior conviction. This, it is claimed, violated sections 1025 and 1093, subdivision (1), of the Penal Code, *supra.* The contention is without merit. The word ''felony'' did not refer to the prior, but to the charge for which defendant was then on trial. Calling the offense a ''felony'' no more informed the jury that there was a prior than did the fact that the case was being tried in the superior court, which only tries felony cases.

A somewhat similar argument is based on the giving of the instruction that ''The Defendant is on trial only for the offense charged in the information, and you may not convict Defendant solely or only because you may believe,

if you do believe, that Defendant is guilty of some other crime or public offense not charged in the information here under consideration.''

Since there was no evidence of any other crime, appellant claims that coupled with the word ''felony'' this must have focused the jury's attention on the prior. But the jury did not know of the prior. The instruction is one for the protection of defendant's rights. While it should not be given where there is no evidence of other crimes, the erroneous giving of it could not possibly have been prejudicial.

The order and judgment appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 21, 1955.