[Crim. No. 6140. In Bank. Nov. 19, 1957.]

THE PEOPLE, Respondent, v. LEROY CARSKADDON, Appellant.

Robert O. Fort, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and J. M. Sanderson, Deputy Attorneys General, for Respondent.

SPENCE, J.—Defendant appeals from a judgment of conviction for violation of section 647a, subdivision (1), of the Penal Code. He contends that the evidence is insufficient to sustain his conviction. The evidence is uncontradicted and although we have viewed it in the light most favorable to the prosecution (*People* v. *Moore,* 137 Cal.App.2d 197, 200 [290 P.2d 40]), we have nevertheless concluded that defendant's contention must be sustained.

On April 19, 1956, at Southside Park in Sacramento, Anthony Bakazan stopped his automobile at a street curb to eat lunch in his car. He saw defendant take a little girl, aged 6, and a little boy, aged 4, underneath a large tree about 30 feet inside the park. They sat there a short time; then

Bakazan saw the boy leave while the girl remained. As Bakazan walked back and forth a few times, watching defendant, the latter would sometimes so move that the tree briefly obscured Bakazan's view. However, Bakazan managed to keep 10 to 30 feet distant from defendant and the girl, and he had a full view of defendant for all but about a minute of the 10 minutes that they stayed under the tree. Bakazan did not see defendant touch the girl.

After some 10 minutes under the tree, defendant and the girl walked to a concession stand where defendant bought the girl an ice-cream bar. Bakazan followed, keeping the two under observation at all times. He never spoke to defendant. Defendant and the girl proceeded up the street in a direction away from the park and toward the Sacramento River. Bakazan continued to follow and to watch, until a motorcycle officer came along. Bakazan called the officer's attention to defendant and the girl. The officer turned his motorcycle and approached defendant. Defendant saw the officer and started to walk ahead of the girl when the officer stopped him. In response to the officer's queries, defendant stated that the girl was not his but that she was lost and he was taking her home, after which he intended boarding a bus to another part of the city. In defendant's presence, the officer then asked the girl if defendant was taking her home. The officer testified that she replied, ''No, he was taking her down the river to show her——'' The officer's testimony was interrupted at this point, and he did not complete his recital of the girl's statement. The officer did not see defendant make any motions with his arms or any other part of his body toward the girl but only observed them ''walking side by side down the street.''

Section 647a, subdivision (1), of the Penal Code provides, as here pertinent: ''Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable. . . .''

Penal provisions are to be construed according to the fair import of their terms, with a view to effect their objects and to promote justice. (Pen. Code, § 4; *People* v. *Valentine,* 28 Cal.2d 121, 142 [169 P.2d 1]; *Ex parte Galivan,* 162 Cal. 331, 333 [122 P. 961]; *Downing* v. *Municipal Court,* 88 Cal. App.2d 345, 349-350 [198 P.2d 923].)

The primary purpose of the above statute is the ''protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter.'' (*People* v. *Moore, supra,* 137 Cal.App.2d 197, 199; *People* v.

*Pallares,* 112 Cal.App.2d Supp. 895, 900 [246 P.2d 173].)

The words "annoy" and "molest" are synonymously used (Words and Phrases, perm. ed., vol. 27, "molest"); they generally refer to conduct designed "to disturb or irritate, esp. by continued or repeated acts" or "to offend" (Webster's New Inter. Dict., 2d ed.); and as used in this statute, they ordinarily relate to "offenses against children, [with] a connotation of abnormal sexual motivation on the part of the offender." (*People* v. *Pallares, supra,* p. 901.)

Ordinarily, the annoyance or molestation which is forbidden is "not concerned with the state of mind of the child" but it is "the objectionable acts of defendant which constitute the offense," and if his conduct is "so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would 'annoy or molest' within the purview of" the statute. (*People* v. *McNair,* 130 Cal.App.2d 696, 697-698 [279 P.2d 800].)

Applying these principles to the record here, we find no evidence to support a finding that defendant had committed any objectionable act which would unhesitatingly irritate a normal person. The cases of *People* v. *McNair, supra,* 130 Cal.App.2d 696, and *People* v. *Moore, supra,* 137 Cal.App. 2d 197, are therefore distinguishable. In each of those cases defendant committed a lewd and obscene act either in front of the child or with the child. No act of that type is shown by the present record. Rather it only appears that defendant was in the company of a 6-year-old girl and a 4-year-old boy in a public park, that he walked down a public street with the little girl by his side, and that when stopped and queried by the officer, defendant stated that the girl was lost and he was taking her home. It is true that the girl's mother testified as to their home address, which apparently was not in the direction in which defendant and the girl were walking. But such circumstance alone does not show that defendant was not innocently befriending the girl nor indicate that he did not intend later to take the girl home unharmed after going to "the river to show her——" The statement of the girl was not completed in the officer's testimony and the record does not disclose the reason for the interruption.

In short, there is no substantial evidence of anything more than friendly noncriminal activity on the part of defendant toward the girl. Any mere suspicion that defendant might have intended to annoy or molest the girl at a later time would rest wholly in the realm of conjecture and would be insuffi-

cient to sustain a conviction of the offense with which he was charged. ■ As was said in *DeMille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139, at page 156 [187 P.2d 769, 175 A.L.R. 382] : ''Penal statutes will not be given application beyond their plain intent. Such acts include only those offenses coming clearly within the import of the language.''

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J., concurred.