[Crim. No. 10236. Second Dist., Div. Two. Oct. 26, 1964.]

In re ROBERT RONALD SHERIDAN et al., on
Habeas Corpus.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Charles D. Stern and Richard E. Erwin for Petitioners.

William B. McKesson, District Attorney (Los Angeles), Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Respondent.

KINCAID, J. pro tem.*—Petitioners have applied for a writ of habeas corpus following the entry of a plea of guilty by each of them to a complaint charging them with a violation of section 647a, subdivision (1), of the Penal Code, a misdemeanor (annoying or molesting children under the age of 18) in four counts. A similar application was heretofore filed in the superior court and, after hearing, denied. An order to show cause was issued by us for the purpose of inquiring into the validity of the sentences imposed as to each of the petitioners.

An answer to the order to show cause, with points and authorities, in opposition to the writ of habeas corpus has been filed by the District Attorney in behalf of the People, the real party in interest, denying each and every of the grounds alleged by petitioners as basis for their petition.

The grounds for their petition are generally that, on June 29, 1964, when they appeared in municipal court for arraignment they were not given a copy of the complaint, were not advised of their right to counsel or to consult counsel before entering their plea, were not advised of and were denied a right to a reasonable time within which to plead, of their right to bail pending plea or of their right to a reasonable time before being sentenced. As a further ground they contend that sentence was illegally rendered against them in violation of section 654, Penal Code, in that the four counts of violation of section 647a, subdivision (1), Penal Code, to

_____
*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

which they pleaded guilty and for which they were sentenced to terms in the county jail to run consecutively, constituted multiple punishment for the single act charged.

The answer of the People filed herein contains affidavits of the trial judge, Lee B. Stanton, a copy of the statement of legal rights read to all persons in the courtroom on June 29, 1964, including petitioners, at the instance and in the presence of the judge, and copy of arrest report of June 28, 1964, of the deputy sheriffs.

From the record herein we determine that on June 29, 1964, Judge Stanton entered the courtroom and informed the persons there assembled, including petitioners, that this was an arraignment proceeding for persons charged with various crimes; that persons so charged were entitled to be informed of their constitutional and statutory rights and that these would be read to them by the clerk of the court. In the presence of the judge the clerk thereupon proceeded to read a statement of legal rights as guaranteed to them by the Constitutions of the United States and the State of California and other laws. This statement was comprehensive and inclusive, including advising them that they were entitled to the assistance of counsel for their defense in every stage of the proceeding, of their right to bail and of their right to a reasonable time to enter their plea. They were further advised that in calling the cases the court would ask each of them, " 'Do you waive the right to counsel?' If you answer, 'Yes' and the Court, after consideration of the nature of the charge, the facts and circumstances of the case, and your apparent education, experience, mental competence and conduct, determines this to be a proper waiver of your right to counsel, there will be no further questions by the Court concerning counsel."

The clerk thereafter read aloud section 1203.4a, Penal Code.

The court thereupon personally explained to those assembled the procedure that would be followed during the arraignment and stated the procedure would be as follows:

"The case will be called as for example, 'People against John Doe.' You will be asked if that is your true name. If it is, you will be informed of the charges and asked how you plead thereto, guilty, nolo contendere, or no contest, or not guilty, or otherwise. If you plead guilty you are entitled to return the following day for sentence, so you will be asked, 'Do you waive time of sentence?' If you do, the Court can then immediately impose fine or sentence or both as the case may be."

The court then explained the procedure to be followed in the case of those defendants who pleaded not guilty.

The court then instructed those assembled that: ''You have been advised of certain rights, including the assistance of counsel for your defense at every stage of proceedings. In calling the cases the Court is going to ask each of you do you waive the right to counsel. If you answer yes, the Court will then consider the nature of the charge, the facts and circumstances of the case, and your apparent education, experience, mental competency and conduct to determine whether this is a proper waiver of your right to counsel. If, after consideration of these matters, the Court finds that you are capable of defending yourself, it will permit you to proceed without counsel. On the other hand, if it finds that you are not, it will require you to employ counsel for your defense. If in the latter circumstances you can demonstrate to the Court that you are financially unable to employ counsel, the Court will appoint a member of the Glendale Bar to represent you without charge. In this connection I might state that generally if you are employed, have a job, the Court will consider that you are financially able to employ your own counsel.''

When the case of People against the petitioners herein was called, each was asked respectively if that was his true name and he answered in the affirmative. Each was asked if he waived counsel and each did so; neither of them indicated in any manner that they wished counsel. The court thereupon determined from all the facts and circumstances that each of the defendants was capable of representing himself without counsel. Thereupon each of the defendants was handed a copy of the complaint by the bailiff. Thereupon the court read the charges to the two petitioners by reading in full the four counts of the complaint wherein each was charged with violating section 647a, subdivision (1), Penal Code, in that he did willfully and unlawfully annoy and molest each of the four named children, being each under the age of 18 years.

The court thereupon asked each of the defendants how he pleaded to each of the charges and each pleaded guilty to each of the four counts.

Thereupon the court called for a copy of the police report of the incident and when he received it, the same was reviewed by the court, and was then handed to the defendants and they read it together.

In addition the court had before it a record which, together

with the handwritten matter appearing on the police report, showed that the defendant Robert Ronald Sheridan had been previously convicted of a sex offense and had been committed to the California Youth Authority therefor. There was also a record before the court of the defendant John Thomas Inch showing prior misdemeanor convictions for offenses other than traffic violations. These also were shown to the defendants. The court thereupon asked each of them if they waived time of sentence and each did so. The court then arraigned each of them for sentence by asking them if there was any legal cause why sentence should not now be pronounced upon them. Sentence was then regularly imposed.

At no time during this proceeding did either of the defendants indicate that they did not understand the nature of the charges against them.

The procedure utilized by the court in the within case in advising those assembled in the courtroom of their constitutional and statutory rights differs markedly from that condemned in *In re Newbern,* 168 Cal.App.2d 472 [335 P.2d 948]. In the latter the defendant and others were advised of their rights by a deputy city public defender over a public address system while they were confined in several adjacent jail tanks.

█ When the case against petitioners was called each indicated his desire to waive counsel. The court thereupon made a determination that, from all the facts and circumstances shown, each of the petitioners was capable of representing himself without counsel. The reading of the complaint in full and the pleas of guilty followed. Having been fully advised concerning their right to be represented by counsel, petitioners' implied waiver of that right resulted from their act of voluntarily entering their pleas of guilty, without having the aid of counsel and without requesting the aid of counsel. (*In re Jingles,* 27 Cal.2d 496, 499 [165 P.2d 12].) No prejudicial violation of either the constitutional or statutory rights of petitioners is here shown.

█ The evidentiary facts as shown by the report of the arresting officers, which report was exhibited to the petitioners prior to entry of their pleas of guilty, are as follows: At about 8:45 p.m. of June 27, 1964, four girls, all under the age of 18, were walking on a sidewalk of a public street. Petitioners, riding in an automobile owned and driven by Inch, stopped beside them and offered them a ride. The girls said they were walking to a restaurant and petitioners offered to drive them there. After some hesitation, the girls got in the automobile and directed petitioners how to get to the

particular restaurant. After driving several blocks it became evident to the girls that petitioners had no intention to take them to the agreed location but were driving the automobile in an opposite direction. The girls demanded to be let out immediately but petitioners refused, promising to take them home later. Upon stopping at an intersection one of the girls attempted to open the right rear door but Sheridan reached over the back seat, pushed her hand away from the door and pressed the lock button down, holding it there for a long period, stating, "You're not getting away so easy." The girls were unable to make any further attempt to get out of the automobile due to Inch's driving at high speed and timing his approaches to traffic signals so as not to be required to stop. Petitioners were consuming several cans of beer while driving, and in response to their inquiry as to their age, the girls advised them that they were 15 and 16 years old. Petitioners laughed and said they could get into trouble for this, mentioning that they had been in jail for that before. Inch drove his automobile to an isolated place in the hills where the vehicle stalled in an attempt to turn around. Petitioners got out of the vehicle, saying they were going to relieve themselves. The girls asked petitioners if they could go too. Petitioners consented, warning them not to go away since they could not go anywhere as they were miles from any place. The girls thereupon got out of the vehicle and ran some distance to a home for assistance. Officers were called by telephone, searched the area near the stalled automobile, and about one hour later found petitioners hiding in heavy bushes.

Section 647a, subdivision (1), of the Penal Code provides, as here pertinent: "Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable . . . ."

■ As stated in *People* v. *Moore*, 137 Cal.App.2d 197, 199-200 [290 P.2d 40]: "The purpose of the section is clear. In *People* v. *Pallares*, 112 Cal.App.2d Supp. 895, at page 900 [246 P.2d 173], this purpose was expressed as follows: 'The object of the enactment of the code section was the protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter. It is common knowledge that the subject of sex offenders, and particularly the protection of the young from improper advances, has in recent years engaged the close attention of the Legislature and of the general body of the citizens of this state.'

"At page 901 the proper interpretation of the section was given by the court as follows:

" 'It seems equally clear that the meaning of the words "to annoy or molest," as employed in the code section, is sufficiently definite and certain to advise the public generally what acts and conduct are prohibited. Annoy means to disturb or irritate, especially by continued or repeated acts; [citations] "to weary or trouble; to irk; to offend; to disturb or irritate, esp. by continued or repeated acts; to vex; to molest . . . harm; injure" (Webster's New Internat. Dict. 2d ed.).

" 'The same dictionary defines "molest" as, "to interfere with or meddle with unwarrantably so as to injure or disturb." Molest is, in general, a synonym for annoy. The term "molestation" always conveys the idea of some injustice or injury. Molest is also defined as meaning to trouble, disturb, annoy or vex. [Citation] . . .

" 'When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children. ▮ It should be noted further that the section must be construed reasonably as setting up an objective test for annoyance or molestation; . . . The annoyance or molestation which is forbidden is in no sense a purely subjective state on the part of the child. The objectionable acts of a defendant constitute the annoyance or molestation contemplated by the statute. [Citation.]' " See *People* v. *Carskaddon,* 49 Cal.2d 423, 425, 426 [318 P.2d 4], and 170 Cal.App.2d 45, 47 [338 P.2d 201]. The foregoing facts fully support the finding of guilty of the charges of annoying and molesting the four children in violation of section 647a, subdivision (1), of the Penal Code.

▮ Petitioners additionally contend that the sentence imposed on them is violative of section 654 of the Penal Code in that the four counts to which they pleaded guilty in reality charged only one act in violation of said section 647a, subdivision (1), and the judgment and sentence resulted in multiple punishment for the single act charged. They argue that because the words "is a vagrant and" follow the words "Every person who annoys or molests any child under the

age of 18 . . ." petitioners stand convicted of vagrancy, a status crime, and not child annoying or molesting. They rely on several cases interpreting former section 647 of the Penal Code, before its amendment by the Legislature in 1961, indicating that even though a person committed several of the then proscribed acts the conviction could be for the single status act of vagrancy.

We are unable to agree with this contention. � The Legislature, in so fully amending section 647 of the Penal Code, made it clear that the commission of the acts therein defined are separate crimes of specific conduct rather than crimes of status and that its intention was to eliminate status crimes in this state, substituting in place thereof workable definitions of criminal conduct. (See Appendix to the Journal of the Assembly, Regular Session 1961, vol. 2. 1959-61 Report of Assembly Interim Committee on Criminal Procedure, pp. 7-19.)

The Legislature, by allowing the companion section 647a, subdivision (1), Penal Code, to remain in its original form, demonstrates an intent that it is the act of annoying or molesting a child under the age of 18 which is punishable and not the status of being a vagrant. The interpolation of the words "is a vagrant and" does not change the effect of the section. It is an act and not a state of being, a mode of life, or an undesirable character that is condemned. The burden on the prosecution is not to prove that one charged with this offense had a child-molesting disposition, but only that he did, in fact, molest or annoy a child. (See *People* v. *Britton*, Cr. A. 2354, App. Dept. Superior Court of Los Angeles County.)

In *Neal* v. *State*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], the defendant, as a result of throwing gasoline into the bedroom of a married couple, was convicted of one count of arson and two counts of attempted murder. The sentences for the latter two counts were ordered to be served consecutively. The court, in applying section 654, Penal Code, held that the act of arson was merely incidental to the primary object of killing the two persons, therefore the defendant may only be punished for the more serious offense, attempted murder. The court then went on to say (pp. 20-21) : "The two attempted murder convictions, however, present a different problem. The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defend-

ant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person. This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled. Section 654 is not '. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' (*People* v. *Brannon,* 70 Cal.App. 225, 235-236 [233 P. 88]; see also *People* v. *Major,* 65 Cal. 138, 146 [3 P. 597, 52 Am.Rep. 295]; *People* v. *Gaither,* 173 Cal.App.2d 662, 668 [343 P.2d 799]; *People* v. *Holman,* 72 Cal.App.2d 75, 100 [164 P.2d 297].) Thus, in *People* v. *Knowles, supra,* 35 Cal.2d 175, 187 [217 P.2d 1], the defendants kidnaped two persons for the purpose of robbing them. The robbery convictions were reversed by reason of Penal Code, section 654, but both kidnaping convictions were affirmed.

''The two consecutive attempted murder convictions were therefore properly imposed.''

We conclude therefore that section 654, Penal Code, does not prohibit imposition of the four consecutive sentences for the criminal acts of annoying or molesting four separate children.

The order to show cause is discharged and the writ of habeas corpus is denied.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied November 16, 1964.