[No. F010602. Fifth Dist. Dec. 6, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
WESLEY ELVIN THOMPSON, Defendant and Appellant.

COUNSEL

Dominic P. Eyherabide, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael J. Weinberger and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WOOLPERT, Acting P. J.—A complaint filed in the West Kern Municipal Court District of Kern County charged defendant with two violations of the Penal Code:[1] Count 1, violation of sections 647a (misdemeanor annoying or molesting a child under 18 years of age, renumbered § 647.6); count 2, section 290 (misdemeanor failure by a sex offender to register or report). The section 290 charge was dismissed for lack of evidence. A court trial on the section 647a violation followed.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

The court found defendant guilty of violating section 647a. Imposition of sentence was suspended for three years and defendant was placed on probation. In addition, he was sentenced to 16 days in the county jail, to be served on weekends.

Defendant appealed to the appellate department of the Kern County Superior Court which affirmed the judgment and certified the matter to this court.

## FACTS

According to the prosecution (*People* v. *Swearington* (1977) 71 Cal.App.3d 935, 941 [140 Cal.Rptr. 5]), the following took place: Twelve-year-old A.W. was riding her bicycle to school on June 2, 1986, shortly after 7 a.m. She saw a man driving a greenish-yellow automobile which was traveling only slightly faster than she was. As the vehicle passed, the driver turned around and looked at her. He was wearing a western style shirt with dots.

A.W. reached the corner and noticed the same vehicle stopped at the intersection. She rode on, and again the vehicle passed her. Continuing down the street, she saw the vehicle stopped once more at the side of the road; the hood was raised. Frightened, she rode to the opposite side of the street.

She rode down the other side of the street until reaching an intersection where she stopped for a red light. When she looked back, she noticed the car was following her and that the driver continued looking directly at her. The light changed and she went through the intersection and across a bridge overcrossing. The vehicle again drove past her, and was once more traveling slowly.

After the vehicle passed, she saw the driver look back in her direction and make hand and facial gestures. She described the hand gestures and facial gestures as follows: He shook his right hand, and moved his mouth as if whispering or pursing his lips.

As she approached the next intersection, A.W. noticed the vehicle had been waiting there for 10 to 20 seconds. The driver was looking at her through the rearview mirror, and also at the passing traffic. When she was within one to two feet of the vehicle, she yelled, "Go" at the driver. The vehicle turned right, and she did as well. The car began driving slowly and then sped up.

The vehicle proceeded down this next street for some time and turned left. A.W. turned left and saw the vehicle was moving very slowly compared with other vehicles on the road. She continued on this street and eventually lost sight of the car; however, she saw it again a short time later. It was parked along the roadside with the hood up again. This was the 10th time she had seen the vehicle since leaving her home.

Afraid something was wrong, A.W. went to a nearby residence and asked for help. Clementine Camargo, who was previously unknown to A.W., answered the door of her residence. She found A.W. crying and shaking. A.W. told Ms. Camargo that she was being followed. Ms. Camargo called the police. While inside Ms. Camargo's home, A.W. looked out a window and saw the car drive past three to four more times. A.W. pointed out the vehicle to Ms. Camargo. At one point, Ms. Camargo heard a car accelerate and drive away at a high rate of speed. The vehicle was an older, mustard-yellow car.

Approximately five to seven minutes after the police were called by Ms. Camargo, Officer Brad Wahl arrived at the residence. The officer found A.W. crying and upset. She was able to tell him that while riding her bicycle, she became frightened by a man driving a yellow, four-door automobile.

Approximately one-half hour had elapsed when Officer Wahl took A.W. outside in order to walk her to her mother's car. The officer saw a vehicle which matched the description given by A.W., and she identified the car. Officer Wahl followed the vehicle to a nearby ARCO mini-market and detained defendant, the driver. A.W. went to the mini-market and identified defendant as the driver of the suspect vehicle.

Defendant admitted to Officer Wahl he had been driving in the area. He claimed he stopped his vehicle several times and made U-turns in order to determine the source of a strange noise coming from the engine, and in order to go to various places that morning. He admitted noticing A.W. on her bicycle, but thought she was much older—either in high school or college. He admitted making one of his U-turns in order to look at her legs, a statement he later denied at trial.

Defendant testified he noticed a girl on a bicycle, and that he may have gestured to her because she was holding up traffic. He further admitted being stopped at one of the intersections where A.W. saw him. He again explained his unusual driving that morning as being primarily due to car trouble.

The defense provided a number of individuals who testified to defendant's truth and veracity, and that he did not have an abnormal sexual interest in children.

## DISCUSSION

Defendant takes the position an accused must commit a lewd or obscene act to be guilty of misdemeanor annoying or molesting a minor. Said another way, such conduct is the active element, or actus reus of the crime. He then goes on to argue that since no lewd or obscene conduct on his part was proven, the conviction is not supported by substantial evidence.

At the time the alleged offense was committed, section 647a (subsequently renumbered § 647.6, Stats. 1987, ch. 1418, § 4.3, p. 266) provided, in pertinent part, as follows:

"Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the county jail for not exceeding six months or by both such fine and imprisonment. . . ."

Although the present case involved a court trial, two jury instructions for section 647a may be helpful in understanding the elements of the crime.

CALJIC No. 16.440 provides: "Every person who annoys or molests any child under the age of 18 years is guilty of a misdemeanor." (2 CALJIC No. 16.440 (4th ed. 1979) p. 215.)

CALJIC No. 16.441 provides: "As used in the foregoing instruction, the words 'annoy' and 'molest' are synonymous and mean to disturb or irritate, especially by continued or repeated acts; to vex; to trouble; to irk; or to offend.

"Conduct which is so lewd that a normal person would unhesitatingly be disturbed or irritated by it, is conduct which would 'annoy or molest' within the law stated to you.

"To constitute the offense charged, it is not necessary to establish that the acts or conduct in fact disturbed or irritated, vexed or offended the child, or that the body of the child was touched.

"To establish the offense charged, it must be proved that the acts and conduct of the defendant were motivated by an unnatural or abnormal

sexual interest with respect to children." (2 CALJIC No. 16.441 (4th ed. 1979) p. 216.)

According to the comment which accompanies CALJIC No. 16.441, the above instructions are derived from a number of cases. The comment provides: " 'Annoy' and 'molest' defined. People v. Carskaddon, 49 Cal.2d 423, 318 P.2d 4; In re Sheridan, 230 Cal.App.2d 365, 40 Cal.Rptr. 894; People v. Pallares, 112 Cal.App.2d Supp. 895, 246 P.2d 173. [¶] Objective test of conduct. People v. Carskaddon, supra; In re Sheridan, supra. [¶] Annoyance of child unnecessary. People v. Carskaddon, supra. [¶] Sexual motivation necessary. In re Sheridan, supra. [¶] No specific intent necessary. In re Sheridan, supra; People v. Pallares, supra. [¶] 'Lewd' defined. Instruction 16.402.[2] No touching necessary. People v. Carskaddon, 170 Cal.App.2d 45, 338 P.2d 201; People v. Thompson, 167 Cal.App.2d 727, 335 P.2d 249." (Comment, CALJIC No. 16.441 (4th ed. 1979) pp. 216-217.)

Defendant relies on these cases, and others, for his assertion that the actus reus of the crime requires a lewd or obscene act on the part of the defendant. The case upon which defendant most heavily relies is *People v. Carskaddon* (1957) 49 Cal.2d 423 [318 P.2d 4]. In *Carskaddon,* the court drew from two appellate court cases and made the following statement, the emphasized part of which is the key to defendant's position: "The words 'annoy' and 'molest' are synonymously used (Words and Phrases, perm. ed., vol. 27, 'molest'); they generally refer to conduct designed 'to disturb or irritate, esp. by continued or repeated acts' or 'to offend' (Webster's New Inter. Dict., 2d ed.); and as used in this statute, they ordinarily relate to 'offenses against children, [with] a connotation of abnormal sexual motivation on the part of the offender.' (*People v. Pallares, supra,* p. 901.) Ordinarily, the annoyance or molestation which is forbidden is 'not concerned with the state of mind of the child' but it is 'the objectionable acts of defendant which constitute the offense,' *and if his conduct is 'so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would "annoy or molest" within the purview of'* the statute. (*People v. McNair* [1955] 130 Cal.App.2d 696, 697-698 [279 P.2d 800].)" (*Id.* at p. 426, italics added.)

The court went on to find the record before it presented no evidence which supported a finding the defendant committed *an act* which was objectionable or which would "unhesitatingly irritate a normal person." (49 Cal.2d at p. 426.) As a result, the court distinguished *People v. McNair,* (1955) 130 Cal.App.2d 696 [279 P.2d 800], and *People v. Moore* (1955) 137 Cal.App.2d 197 [290 P.2d 40], cases upon which the prosecution relied. The

---

[2] "As used in the foregoing instruction, the words 'lewd' and 'dissolute' are synonymous and mean lustful, lascivious, unchaste, wanton, or loose in morals and conduct." (2 CALJIC No. 16.402 (4th ed. 1979) p. 209.)

court noted the defendants in those cases committed a lewd act in front of, or with the child victim. The record in *Carskaddon,* on the other hand, presented no evidence of such an act occurring. (*People* v. *Carskaddon, supra,* 49 Cal.2d at p. 426.)

The defendant in *Carskaddon* met a six-year-old girl and a four-year-old boy in a public park. He walked along a public street with the girl by his side. An officer stopped and questioned the defendant. The defendant said the girl was lost and he was taking her home; however, they were walking in the wrong direction. The court was not convinced walking in the wrong direction was anything other than an innocent befriending of the girl. There was no evidence the defendant intended to do anything other than take the girl home unharmed. (49 Cal.2d at p. 426.) The court concluded by citing *DeMille* v. *American Fed. of Radio Artists* (1947) 31 Cal.2d 139 [187 P.2d 769, 175 A.L.R. 382], for the proposition that: " 'Penal statutes will not be given application beyond their plain intent. Such acts include only those offenses coming clearly within the import of the language.' " (*People* v. *Carskaddon, supra,* 49 Cal.2d at p. 427.)

Defendant in the present case argues his actions are analogous to those of the defendant in *Carskaddon*. The superior court appellate department held: his acts constituted an annoyance of the minor; and section 647a *did not require* the specific act of annoying to be lewd or obscene. It reasoned the section only requires proof of articulable, objective acts which would cause a normal person to be unhesitatingly irritated, provided the acts are motivated by an abnormal or unnatural sexual interest in the child victim. We agree.

Defendant reads too much into the *Carskaddon* opinion. The court stated that no such "act" (lewd or obscene act in front of or with the child) took place in the case before it. However, the court's reference to a lewd or obscene act which would unhesitatingly irritate the normal person was a reference to the entire crime prohibited by the section: the forbidden "conduct" of the perpetrator. This would include both the act of annoying or molesting under the objective test, *and* the requisite mental state. We doubt the court intended to separate the two elements when it made its general statement about the section. (See 49 Cal.2d at p. 426.)

We further note the court later explained in *In re Gladys R.* (1970) 1 Cal.3d 855, 868 [83 Cal.Rptr. 671, 464 P.2d 127], footnote 24, it was unnecessary in *Carskaddon* to consider the question of the defendant's motivation. Nevertheless, the court went on to reaffirm the requirement that the acts be motivated by an abnormal sexual intent toward the child victim. (1 Cal.3d at p. 868, fn. 24.) In the present case, defendant does not

challenge the sufficiency of the evidence of abnormal sexual intent. He argues only a failure to prove inappropriate physical acts.[3]

■ Proof of the crime is sufficient when only a simple touching is shown, provided the touching was done with a lustful intent. (*People* v. *Austin* (1980) 111 Cal.App.3d 110, 113-114 [168 Cal.Rptr. 401].) The touching, or "act" as defendant would describe it, can appear outwardly innocent. The crime will be complete and the prohibited criminal "conduct" will occur if this touching is done by the defendant in order to arouse, etc., the sexual desire of the perpetrator or the child. (*People* v. *Hobbs* (1952) 109 Cal.App.2d 189, 192 [240 P.2d 411].)

■ Defendant's analysis depends upon an unrealistic separation of motivation and acts. As stated in his brief, he fears the precedent of making "every neutral act by a pedophile" a criminal act if the child is "irritated" in any way. However, this is not such a case. The required activity—sometimes patently sexual—assures against conviction on mere suspicion or reputation, as well as by mistake. The act of viewing for sexual pleasure may not, in itself, be criminal. However, when the viewing is associated with activity which ordinarily causes annoyance to the subject of the attention, the statute may be violated.

Since we have concluded the annoying or molesting act need not, in and of itself, be lewd, the question remains whether there was sufficient evidence to sustain the conviction. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

Sufficient evidence was presented to prove defendant annoyed or molested A.W. under both a subjective and objective standard. Clearly the child was disturbed or irritated by defendant's actions. She feared for her safety, and her fear was clearly apparent to the responding officer, and to Ms. Camargo. Defendant's actions were both continued and repeated, and were reasonably calculated to disturb or irritate A.W. He repeatedly drove past her, stared at her, and on at least one occasion made hand and facial gestures in her direction. In addition, he stopped his vehicle along her route of travel, causing her to pass by the stopped vehicle if she was to continue

---

[3] We note defendant's intent was established. His prior conviction for violation of section 288a, subdivision (c) was specifically admitted into evidence for this purpose. He has not challenged this evidentiary ruling on the appeal in our court. His sexual interest was also made clear by his own admission that he had been "admiring" the girl's legs. He made one of his U-turns for this purpose. Whether he was truthful in trying to qualify his interest, by claiming a belief the girl was older, was a credibility question for the trier of fact. Finally, there was testimony defendant made hand and facial gestures in the direction of the victim, which the court may have believed to have been sexual in nature or sexually motivated.

along the same route. He also drove more slowly than the rest of the traffic as he approached her and as he drove alongside her.

It is clear this behavior would place a normal person in a state of being unhesitatingly irritated, if not also fearful. (*People* v. *Carskaddon* (1959) 170 Cal.App.2d 45, 47 [338 P.2d 201]; *People* v. *Pallares* (1952) 112 Cal.App.2d Supp. 895, 900-901 [246 P.2d 173].)

The facts in this case can be compared to those in *In re Sheridan* (1964) 230 Cal.App.2d 365 [40 Cal.Rptr. 894]. The defendants picked up four girls who were walking on the sidewalk, and gave them a "ride" in an automobile owned and driven by one of the defendants. The defendants offered to give the girls a ride to a restaurant which they were walking toward at the time the defendants saw them. (*Id*. at p. 370.) After driving a few blocks, the defendants informed the girls they did not intend to take them to the restaurant, and proceeded to drive in a different direction.

Although the girls demanded to be let out of the car, the defendants refused, promising to take them home at a later time. When the car stopped at an intersection, one defendant, who was sitting on the passenger side of the vehicle, reached into the backseat area and pushed one of the girl's hands away from the door. He then placed his hand on the door lock and held it there for some time, telling them they were not going to get away so easily. (230 Cal.App.2d at p. 371.) The defendants drove for some time and consumed beer while driving. The girls told them their ages (all under 18 years of age), and the defendants laughed, noting they could get into trouble. They then told the girls they had been in jail on a prior occasion for the same thing. (*Ibid*.) When the opportunity arose, the girls escaped and went to a nearby home for assistance. (*Ibid*.)

The *Sheridan* court acknowledged the legislative intent behind the section: protection of children from sexual offenders and aid in the apprehension, etc., of such offenders. (230 Cal.App.2d at p. 371.) The court next quoted from the also well-settled definitions of "annoy or molest," and the standard language from the *Carskaddon* opinion regarding the objective nature of the test for annoyance or molestation. The court had no difficulty in affirming the finding of guilt on the charges of annoying or molesting the four girls. (*Ibid*.)

It would be difficult to characterize the physical acts of the defendants in *Sheridan,* standing alone, as being lewd or obscene, in the sense that the acts were in *McNair* and *Moore* (lewd acts in front of or with the victim). On the other hand, their acts were not so innocuous as those of the defendant in *Carskaddon*.

We conclude the conviction is supported by substantial evidence. (See *People* v. *Fernandez* (1961) 196 Cal.App.2d 265, 267 [16 Cal.Rptr. 482].) Viewing his conduct as a whole, and not narrowly as he contends, we find defendant did, with sexual motivation, annoy or molest A.W.

The judgment is affirmed.

Martin, J., and Best, J., concurred.