Filed 12/15/21  P. v. Harvey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C092108 |
| Plaintiff and Respondent, | (Super. Ct. No. CR037233) |
| v. | |
| KEVIN LEE HARVEY, | |
| Defendant and Appellant. | |

A jury found defendant Kevin Lee Harvey guilty of burglary based on his entry into an inhabited dwelling with the intent to commit the crime of child annoyance.  The jury deadlocked on the substantive child annoyance charge, which the court dismissed at the prosecutor's request.  On appeal, defendant challenges the burglary conviction for insufficient evidence.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant, age 58, lived next to Jane Doe, age 13.  During their five years as neighbors, defendant seldom interacted with Jane's parents (mother and father) and had

1

never been inside their house. Defendant sometimes made comments to Jane as she walked alone past his house after school. The comments made Jane feel "awkward" and she generally did not respond.

In June 2019, "some guys" in a car drove by Jane as she walked down her street. They asked Jane if she needed a ride and she refused. The car then parked at defendant's house. The incident "kind of spooked" Jane.

Two months later, defendant went to Jane's house around 3:00 p.m. and asked to speak to Jane. Father told defendant Jane was not home. Later that day, defendant went back to Jane's house. Defendant brought dress shirts for father, then he asked again to speak to Jane. To be "congenial," mother encouraged Jane to come to the door and talk to defendant. Defendant spoke to Jane for five to 10 minutes on the front steps. Defendant apologized to Jane about the guys in the car who tried giving her a ride and said those people were not his friends. He told Jane she did not have to worry about him and that he would never hurt her. Jane's parents considered it "strange" defendant wanted to talk to their daughter.

That night Jane slept alone in her bedroom. She awoke in the middle of the night when she heard her dog barking and footsteps in the house. Defendant opened her bedroom door, stood in the threshold of her doorway and said, "Are you in here?" Jane turned on the light and shouted, "What are you doing in my house? You need to leave." Defendant left. Jane woke up her parents and told them defendant was in the house. Mother called 911. Police were dispatched to Jane's house at 2:48 a.m.

While mother was on the phone with the 911 dispatcher, father watched defendant because he was standing in the road. Defendant was talking loudly to himself or an "imaginary person" and mentioned an "Aunt Shelley." Mother heard defendant talking to himself as he walked back toward Jane's house, so mother called 911 again.

Police soon arrived, found defendant sitting by the front steps of Jane's house, and detained him. Defendant asked why he had been detained, and police told him they

2

received a report he went into a 13-year-old girl's bedroom. Defendant said, "She's 14 and a half and how do you know I went into her room?"

After the presentation of evidence, the jury deliberated on two charges: whether defendant entered an inhabited dwelling with the intent to commit the crime of annoying or molesting a child (burglary) and whether defendant annoyed or molested a child (child annoyance). The jury asked the court to clarify the third element of the child annoyance charge, that the conduct be "motivated by an unnatural or abnormal sexual interest."[1]

Regarding the child annoyance charge, the jury deadlocked 10 to 2 in favor of guilt. The court declared a mistrial as to that charge and dismissed it at the prosecutor's request. Regarding the burglary charge, the jury found defendant guilty and found true the inhabited dwelling allegation. In a bifurcated proceeding, defendant admitted to having been convicted of a prior strike conviction. The court sentenced defendant to the middle term of four years for the burglary conviction, doubled to eight years because of the strike enhancement. Defendant appeals.

## DISCUSSION

Defendant challenges his burglary conviction by arguing there was insufficient evidence he was motivated "by an abnormal or unnatural sexual interest" when he entered the inhabited dwelling with the intent to commit the crime of child annoyance. He concedes all other elements.

On appeal we review "the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a

---

[1] The parties agreed the element "should be contemplated by the normal use and definition of those words." The court said it would give itself and the parties time to research an answer, but the record does not disclose what further action, if any, was taken.

reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) " 'We presume " 'in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] This standard applies whether direct or circumstantial evidence is involved." ' " (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 294.) We uphold the verdict unless "it clearly appears that upon no hypothesis whatever is there sufficient evidence to support it." (*People v. Massie* (2006) 142 Cal.App.4th 365, 371.)

Burglary is committed when a person enters an inhabited dwelling house with the specific intent to commit a felony. (Pen. Code,[2] §§ 459, 460, subd. (a).) Felonious intent "must usually be inferred" from circumstantial evidence. (*People v. Matson* (1974) 13 Cal.3d 35, 41.) For burglary, the intended felony need not actually occur. (*People v. Lawrence* (2000) 24 Cal.4th 219, 232-233.) Here, the jury was instructed it needed to find defendant intended to commit the crime of child annoyance to find him guilty of burglary. (§ 647.6.)

Child annoyance covers conduct directed at a specific child or children generally -- motivated by an abnormal or unnatural sexual interest -- that would unhesitatingly irritate or disturb a normal person. (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1395-1396.) Whether a normal person would be irritated is an "objective test" that does not consider the child's subjective state of mind. (*Id*. at pp. 1389-1390.) The conduct itself need not be lewd or obscene. (*Id*. at p. 1391, citing *People v. Thompson* (1988) 206 Cal.App.3d 459, 461, 465, 468 [sufficient evidence of annoying conduct where the defendant repeatedly drove past 12-year-old female cyclist and made facial and mouth gestures].)

---

[2] Further section references are to the Penal Code unless otherwise indicated.

Defendant argues there was no substantial evidence he was motivated "by an abnormal or unnatural sexual interest" in Jane. Because motive is not generally an element of a crime, this court has characterized the child annoyance offense as a "strange beast." (*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1126.) " '[N]o specific intent is prescribed as an element' " (*In re Gladys R.* (1970) 1 Cal.3d 855, 867) of the offense, but child annoyance does require motive, " 'the reason a person chooses to commit a crime' " (*People v. Thompson* (2016) 1 Cal.5th 1043, 1123, quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 504 [distinguishing motive from intent]). Our Supreme Court described child annoyance offenses as involving "a *connotation* of abnormal sexual motivation." (*People v. Lopez* (1998) 19 Cal.4th 282, 290, italics added.) The defendant may be motivated by a sexual interest in "any child" or children generally. (*People v. Phillips*, *supra*, 188 Cal.App.4th at p. 1396.) Overall, the offense targets conduct which "a reasonable person aware of all the external circumstances would *readily suspect* to be motivated by an unnatural or abnormal sexual interest in the victim." (*People v. Lopez*, *supra*, 19 Cal.4th at p. 297 (conc. opn. of Baxter, J.).) The motive element distinguishes the offense from, for example, "normal sexually motivated conduct, not otherwise prohibited, between an 18-year-old high school senior and his or her 16- or 17-year-old sweetheart." (*Id.* at p. 298, fn. 3.)

Contrary to defendant's argument, the record supports the inference defendant entered the house with the intent to seek out Jane specifically. The record shows defendant sought out Jane three times in 12 hours, the third time evidenced by defendant's question while inside Jane's bedroom, "Are you in here?" Because defendant had asked for Jane twice earlier that day and, again, was looking for Jane specifically, in a bedroom, in the middle of the night, a juror could reasonably infer defendant's entry was motivated by a sexual interest in Jane.

Further, defendant's statements earlier in the day support the inference he entered Jane's house with a sexual motive. Defendant told Jane he posed no harm and distanced

himself from the men who tried giving her a ride. Hours later, defendant went to Jane's bedroom in the middle of the night, unannounced and without permission. A juror could reasonably infer defendant first tried to gain Jane's trust to facilitate his entry into her bedroom later that night by causing her to be less likely to be alarmed and resist him or otherwise protest his presence. In whole, the record shows defendant attempted to establish trust with Jane before he approached her in an intimate and vulnerable setting. A juror could reasonably infer from the evidence defendant's interest in Jane was sexual.

Given the 45-year age gap between defendant and Jane, together with the fact that Jane was a child, a juror could reasonably infer defendant's sexual interest was unnatural or abnormal. (See *People v. Shaw* (2009) 177 Cal.App.4th 92, 103 ["there can be no *normal* sexual interest in any child"].) No evidence showed defendant and Jane's relationship was based on common interests or friendship. Indeed, Jane felt "awkward" about defendant's one-sided attempts to speak with her and Jane's parents likewise considered defendant's interest in her "strange."

Additionally, defendant told police Jane was "14 and a half" years old when she was in fact 13 years old. A juror could reasonably infer defendant claimed Jane was older to make his motivation appear less sexually inappropriate. Thus, defendant's statement could indicate a consciousness of guilt. Accordingly, the record supplies sufficient evidence from which a jury could find defendant was motivated by an unnatural or abnormal sexual interest in Jane when he entered the house.

Defendant disagrees and argues he was instead motivated by an apparent mental health episode. "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding

6

does not warrant a reversal of the judgment." ' " (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) Here, other than defendant's strange behavior the day of the incident, there was no evidence of his mental health history or condition. We presume therefore the jury did not find it reasonable that defendant's motive upon entering Jane's house was nonsexual.

Defendant argues the inconsistency between the jury's conviction on the burglary charge and the jury's deadlock on the child annoyance charge demonstrates insufficient evidence for the former. As defendant admitted at trial and on appeal, this issue alone does not warrant reversal. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 853, fn. 11 [holding inconsistent verdicts may stand even when factually irreconcilable].) Thus we need not address the inconsistent verdict issue further.

Lastly, defendant relies on two cases wherein a child annoyance conviction was reversed for insufficient evidence. (*People v. Clotfelter* (2021) 65 Cal.App.5th 30, 38-39 [the defendant, a known child molestor, exchanged hugs, gifts, and emails with a 15-year-old boy]; *People v. Carskaddon* (1957) 49 Cal.2d 423, 424 [the defendant took a six-year-old girl underneath a tree in a public park, bought her ice cream, then walked with her in a direction away from the girl's home].) These cases concern the defendants' conduct, which "must be divorced from consideration of what motivated the actor." (*Clotfelter*, at pp. 51-52; see *Carskaddon*, at p. 426.) Here, defendant concedes his conduct "would have disturbed, irritated or offended any normal person," and thus the cases cited are unavailing.

We conclude there was substantial evidence from which the jury could find beyond a reasonable doubt that defendant was motivated by an abnormal or unnatural sexual interest when he entered Jane's house with the intent to annoy her. Accordingly, sufficient evidence supports defendant's burglary conviction.

## DISPOSITION

The judgment is affirmed.

7

/s/ _____
Robie, Acting P. J.

We concur:


/s/ _____
Duarte, J.


/s/ _____
Hoch, J.

8