52 Cal.Rptr.3d 336 (2006)
145 Cal.App.4th 1371
The PEOPLE, Plaintiff and Respondent,
v.
Jeffrey Allen ISOM, Defendant and Appellant.
No. C048429.
Court of Appeal of California, Third District.
December 5, 2006.
As Modified December 21, 2006.
*338 Steven Schorr, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Senior Assistant Attorney General, Stan Cross and J. Robert Jibson, Supervising Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
*337 HULL, J.
Defendant Jeffrey Allen Isom was charged and convicted of committing three counts of lewd and lascivious acts upon a child under the age of 14 years. (Pen. Code, § 288, subd. (a).) The jury found true the multiple victim enhancement allegation as to each count (Pen.Code, § 667.61, subd. (b) [15 years to life]) and defendant admitted the truth of two prior strike convictions (Pen.Code, §§ 1170.12, subds.(a)-(d); 667, subds. (b)-(i)). The trial court imposed three consecutive terms as follows: Count one, 45 years to life (three times 15 to life); count two, 25 years to life; and count three, 45 years to life (three times 15 to life). The court struck the multiple victim allegation as to count two, finding counts one and two were committed on the same occasion. Defendant was sentenced to a total term of 115 years to life.
*339 On appeal, defendant raises a number of claims. He argues: (1) the admission of evidence of a prior sexual offense violated his right to due process of law; (2) the trial court abused its discretion when it failed to exclude evidence of the prior sexual offense pursuant to Evidence Code section 352; (3) the evidence was insufficient to prove defendant acted with lewd intent; (4) Evidence Code section 1108 violates the Equal Protection clause because it fails to contain a provision presumptively excluding remote convictions comparable to the protection against remoteness set forth in Evidence Code section 1109; (5) the trial court's instruction to the jury pursuant to CALJIC 2.50.01 violated defendant's right to due process of law; (6) the trial court's imposition of three consecutive sentences based on its determination that the three offenses were not committed on the same occasion and did not arise from the same set of operative facts violated the holding in Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely); (7) the trial court made contradictory sentencing findings as to counts one and two; and (8) defendant's aggregate sentence constitutes cruel and unusual punishment.
In addition to defendant's assignments of error, we asked for supplemental briefing on the question whether the trial court erred in failing to give a lesser included offense instruction for annoying and molesting a child under the age of 18 years. (Pen.Code, § 647.6, subd. (a).)
Finding no error, we affirm the judgment.

FACTS

A. Charged Offenses
On July 3, 2003, 12-year-old Samantha and her younger sister went with their grandmother, Bonnie G., to the Safeway store in Paradise. There were very few customers in the store at the time. While the threesome were standing in the card aisle looking for birthday cards, defendant walked past Samantha, slid his hand across her bottom for a second, continued walking down the aisle, and turned the corner. The only other person standing nearby was at the far end of the aisle and the aisles were wide, so it was not necessary for defendant to pass so close to Samantha. Nevertheless, Samantha told her grandmother a man accidentally touched her bottom and her grandmother agreed.
A short time later, while Samantha and her grandmother were in the cake section, defendant walked by them again and this time he grabbed Samantha's bottom. She told her grandmother defendant grabbed her butt and that he had been following her around the store, staring at her. She was shaking and nervous and her voice was quivering.
When Samantha saw defendant standing at the checkout counter, she pointed him out to her grandmother, who then pointed her finger at him and said "[d]on't you dare touch my granddaughter." When defendant finished paying for his groceries, he left the store and got into his pickup truck, where he sat for about 20 minutes.
Meanwhile, another customer, Nancy C, was in the store with her 10-year-old granddaughter Michaela. While Michaela was standing next to Nancy C. in one of the aisles, defendant pinched Michaela's buttocks. Nobody else was in the aisle.
Michaela told her grandmother that defendant touched her and when Nancy C. asked her whether it was an accident, the child started to cry and said "No, grandma, it wasn't an accident. He grabbed my butt." Nancy C. saw defendant who was by then at the end of the aisle. She *340 followed him so she could see what he looked like and what he was doing and continued to follow him until she saw him leave the store.
While Nancy C. and Michaela were on their way to the checkout counter, Nancy C. overheard Bonnie G. telling the store manager about the incident involving Samantha. After asking Bonnie G. whether her granddaughter had been touched too, Nancy C. told the manager what happened to Michaela.
As they left the store, Nancy C. and Michaela saw defendant sitting in his truck in the parking lot. Before leaving the lot, Nancy C. drove past defendant's truck and Michaela wrote down the license plate number and a description of the truck. Nancy C. then saw defendant move his truck to another area in the parking lot where he could view the store entrance, so she returned to the store with Michaela and called the police.
When the police arrived, defendant was still sitting in his truck. Officer Rowe asked him why he was still there and defendant explained that he went to buy briquettes for a barbeque and was checking his receipt to determine if he had enough money in his ATM account to make another purchase. However, he did not have a receipt in his hand and took some time to finally locate it in his wallet. The receipt had no information showing defendant's account balance. When the officer asked defendant about the reported touchings, he denied they happened, but said that if he did touch anyone, it was an accident because it was very busy inside.
Meanwhile, Officer Gallagher took Samantha and Michaela outside where each one independently identified defendant as the man who touched her. Defendant was arrested and taken into custody.

B. Uncharged Offense
On the morning of May 31, 1991, 15year-old Jessie was walking alone on a trail on her way to the high school. As she walked through some bushes to a paved bike path, she saw defendant on the path. She walked behind him for a short distance and he kept looking back at her. When she left the path, he took another trail and fell in behind her. As Jessie was about to cross a dry creek bed, defendant ran up behind her, grabbed her, and lifted her off the ground. He put his hand over her mouth and, using "an evil, mean" tone, told her to "shut up" and then pushed her to the ground face down. As she struggled, her glasses and the rocks on the ground scratched her face.
Although defendant was sitting on her, Jessie was able to turn over, but her legs were caught in the bushes, which scraped her legs whenever she moved them. Meanwhile, defendant was trying to unbuckle her belt. Believing defendant was going to rape her, Jessie decided to fight back and started to scream and hit him. He repeatedly told her to shut up and unsuccessfully attempted to control her flailing arms. When he grabbed her breast, Jessie became enraged and hit defendant harder. He finally fled and she was able to run to the school, where she reported the attack. Defendant pleaded guilty to a charge of assault with intent to commit rape (Pen.Code, § 220) and was sentenced to state prison for the attack.
The defense rested without presenting any evidence.

DISCUSSION

*341 I[**]

II

Evidence Code Section 352
Defendant contends that, even if the admission of evidence of prior sexual misconduct did not violate his right to due process of law, the trial court abused its discretion by admitting evidence, pursuant to Evidence Code section 1108, of the 1991 assault with intent to commit rape committed against Jessie. He argues that due to the significant passage of time, the substantial dissimilarities between the charged and uncharged offenses, and the inflammatory nature of the uncharged offense, its minimal probative value was substantially outweighed by its prejudicial effect.
The People contend the trial court did not abuse its discretion, because there was some similarity between the charged and uncharged offenses that showed defendant's propensity to sexually assault young girls and the evidence of the assault was not speculative or especially inflammatory.
We find no error.

A Governing Principles

Evidence Code section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." A "sexual offense" within the meaning of Evidence Code section 1108, subdivision (a), includes a violation of Penal Code section 288. (Evid. Code, § 1108, subd. (d)(1)(A).)
Evidence Code section 352 gives the trial court discretion to exclude evidence if the probative value of the evidence is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid.Code, § 352.)
Thus, Evidence Code section 1108 is a stand-alone statutory exception to the exclusion of propensity evidence mandated by Evidence Code section 1101, subdivision (a). The admissibility of propensity evidence "radically changed with respect to sex crime prosecutions with the advent of [Evidence Code] section 1108. Determining that, in a sex offense prosecution, the need for evidence of prior uncharged sexual misconduct is particularly critical given the `serious and secretive nature of sex crimes and the often resulting credibility contest at trial' (People v. Fitch (1997) 55 Cal.App.4th 172, 181-182, 63 Cal.Rptr.2d 753), the Legislature enacted [Evidence Code] Section 1108, which provides that evidence of a prior sexual offense `is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352.' By removing the restriction on character evidence in [Evidence Code] section 1101, [Evidence Code] section 1108 now `permit[s] the jury in sex offense ... cases to consider evidence of prior offenses for any relevant purpose' (People v. James (2000) 81 Cal.App.4th 1343, 1353, fn. 7, 96 Cal.Rptr.2d 823, italics added), subject only to the prejudicial effect versus probative value weighing process required by [Evidence Code] section 352." (People v. Britt (2002) 104 Cal. App.4th 500, 505, 128 Cal.Rptr.2d 290 (Britt).)

*342 B. The Trial Court's Ruling

The People moved to admit the evidence of the uncharged offense under Evidence Code sections 1101, subdivision (b), to show intent, and 1108, to show propensity to commit sexual assaults. The court denied the motion under Evidence Code section 1101, subdivision (b), finding the uncharged and charged offenses were not sufficiently similar, but granted the motion under Evidence Code section 1108.

C. Abuse of Discretion Under Evidence Code Section 352
We review the trial court's ruling for an abuse of discretion (People v. Frazier (2001) 89 Cal.App.4th 30, 42, 107 Cal. Rptr.2d 100), which means "[t]he trial court enjoys broad discretion under Evidence Code section 352 in determining whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time and this discretion is built into Evidence Code section 1108, subdivision (a). The exercise of this statutory discretion will not be disturbed on appeal'"except on a showing that the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ...'" (Id. at p. 42,107 Cal.Rptr.2d 100.)
In Falsetto, supra, 21 Cal.4th 903, 89 Cal.Rptr.2d 847, 986 P.2d 182, our high court addressed factors to be considered in determining whether evidence offered pursuant to Evidence Code section 1108 should be excluded pursuant to Evidence Code section 352. The court said: "[T]rial judges must consider such factors as [the uncharged sex offense's] nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden of the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (Falsetto, supra, at p. 917, 89 Cal.Rptr.2d 847, 986 P.2d 182.)
In its discussion on this point, the Falsetta court made reference to its holding in People v. Balcom (1994) 7 Cal.4th 414, 27 Cal.Rptr.2d 666, 867 P.2d 777, which "explained that the probative value of `other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense. (Balcom, supra, 7 Cal.4th at p. 427, 27 Cal.Rptr.2d 666, 867 P.2d 777.) [The court] also observed that the prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual convictions and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses. (Ibid.)" (Falsetto, supra, 21 Cal.4th at p. 917, 89 Cal.Rptr.2d 847, 986 P.2d 182.)
As we have said, we are called upon to decide whether the trial judge's decision to admit the evidence of the 1991 assault on Jessie with intent to commit rape was arbitrary, capricious or patently absurd such that it resulted in a manifest miscarriage of justice. (People v. Frazier, supra, 89 Cal.App.4th at p. 42, 107 Cal.Rptr.2d 100.) It was not.
Considering the factors referred to above, the attack on 15-year-old Jessie was probative in that it demonstrated defendant *343 had an abnormal sexual interest in young girls, even though Jessie was some four years older at the time she was assaulted than the victims in this case. The evidence of the assault on Jessie was not highly inflammatory, since the defendant broke off the attack when Jessie fought back and Jessie was not physically harmed except for scrapes and bruises. The jurors were not likely to be so angered by the attack on Jessie that they were unable to objectively consider the evidence relating to the charges before them.
While the incident with Jessie was somewhat remote, defendant was, as a result of it, sent to state prison, which necessarily reduced the number of years he was free of custody before 2003, when the incidents charged in this matter occurred. It is certain defendant committed the offense against Jessie, because he admitted to it; there was no burden on defendant in defending against it. And the prejudicial impact of the prior offense was diminished by the fact that defendant was convicted of the offense and served a term in state prison. Thus, the jury in this matter was not tempted to convict him simply to punish him for the offense against Jessie.
There is the issue of the similarity of the offenses which is one of the factors relevant to the Evidence Code section 352 analysis. There is obviously some dissimilarity between an assault with intent to commit rape on a 15-year-old girl in a secluded area and the lewd and lascivious grabbing of the buttocks of two 11-year-old girls in a public setting. Even so, there are similarities, too, including most importantly, the fact that defendant demonstrated on an earlier occasion an aberrant sexual interest in young girls. The prior sexual offense was not, after all, committed on an adult. It was committed on a 15-year-old girl. Justice Blease, in dissent, refers to Jessie as "a sexually mature 15-year-old high school student." (Dis. opn., post, at p. 359.) But we note that, other than chronological age, there is no evidence in the record relating to Jessie's "sexual maturity" or her "maturity" in general or the "maturity" of the two victims in the instant case.
Justice Blease is of the opinion that the offenses were so dissimilar that it was a prejudicial abuse of discretion to admit the evidence of defendant's sexual assault on Jessie. He says the most significant issue before the jury was the question of defendant's intent and then imports the body of law relating to evidence of intent as that concept appears in Evidence Code section 1101, subdivision (b), particularly that which speaks to the necessary degree of similarity between the current offense and the uncharged offense. In doing so, we think he elevates the question of similarity of the offenses beyond that which is appropriate in judging the admissibility of evidence under Evidence Code section 1108.
In Britt, referred to earlier, the defendant argued that evidence offered under Evidence Code section 1108 could only be used to prove "propensity" and not identity. If offered to prove identity, the defendant argued, the evidence was only admissible if the prior conduct was so distinctive as to be like a signature, thus incorporating the analysis of evidence offered to prove identity under Evidence Code section 1101, subdivision (b), as set forth in People v. Ewoldt (1994) 7 Cal.4th 380, 27 Cal.Rptr.2d 646, 867 P.2d 757 (Ewoldt).
We rejected that argument, observing: "The flawed premise in Britt's argument is that [Evidence Code] section 1101, subdivision (b)'s test for admissibility of prior uncharged offenses in a sex offense case survived the enactment of [Evidence Code] section 1108. It did not. `In enacting Evidence Code section 1108, the Legislature decided evidence of uncharged sexual *344 offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101.' (People v. Yovanov (1999) 69 Cal.App.4th 392,405, 81 Cal.Rptr.2d 586, italics added.) ` When [Evidence Code] section 1108 swept away the general prohibition on character evidence set forth in [Evidence Code] section 1101, it rendered moot the exceptions to that prohibition created by [Evidence Code] section 1101, subdivision (b). Thus, in a sex crime prosecution, the `signature test' is no longer the yardstick for admission of uncharged sexual misconduct to prove identity." (Britt, supra, 104 Cal. App.4th at pp. 505-506, 128 Cal.Rptr.2d 290.)
Although Britt dealt with the question of Evidence Code section 1108 evidence as it bears on identity, its holding applies equally to Evidence Code section 1108 evidence offered to prove intent. The similarity analysis of Ewoldt simply does not apply. Similarity of the crimes is a consideration in the Evidence Code section 352 analysis required by Evidence Code section 1108, inasmuch as it is one of many factors for the trial court to consider when the evidence is offered pursuant to that section. However, similarity plays a much smaller role on the question of admissibility under Evidence Code section 1108 than it does when the court is considering propensity evidence as an exception to the rule of inadmissibility set forth in Evidence Code section 1101.
Our view on this point is consistent with the legislative history of Evidence Code section 1108. In the "Letter of Intent" from Assembly Member Rogan dated August 24, 1995 regarding the bill that became Evidence Code section 1108a letter our Supreme Court relied on in part in deciding the issues presented in Falsetta Assembly Member Rogan reported that "[d]uring the hearing before the Assembly Committee on Public Safety, the language of [section 1108] of the Evidence Code was amended to provide explicitly that evidence of other offenses within the scope of the section is not subject to [Evidence Code section 1101]'s prohibition of evidence of character or disposition. This makes it clear that [Evidence Code section 1108] permits courts to admit such evidence on a common sense basiswithout a precondition of finding a `non-character' purpose for which it is relevantand permits rational assessment by juries of evidence so admitted." (Letter by Assembly Member Rogan (Aug. 24, 1995) regarding Assem. Bill No. 882, pub. in 2 Assem. J. (1995-1996 Reg. Sess.) p. 3278, reprinted at 29B pt. 3 West's Ann. Evid.Code (2006 pocket supp.) foil. § 1108, pp. 180-181 (hereinafter Letter of Intent).)
The Letter of Intent goes on to say that "[a]t the hearing before the Judiciary Committee, there was discussion whether more exacting requirements of similarity between the charged offense and the defendant's other offenses should be imposed. The decision was against making such a change, because doing so would tend to reintroduce the excessive requirements of similarity under prior law which [the bill enacting Evidence Code section 1108] is designed to overcome, see Lungren, [Stopping Rapists and Child Molesters by Giving Juries All the FactsReforms in Federal and California Law in Prosecutor's Brief (1995) volume XVII, No. 2, page 14], and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative. Many sex offenders are not `specialists', and commit a variety of offenses which differ in specific character." (Letter of Intent, 29B pt. 3 West's Ann. Evid.Code, supra, foil. § 1108, at p. 181.)
*345 Properly considered, the arguable dissimilarities between the offenses we deal with here cannot lead to the conclusion that the trial court abused its discretion when it admitted, pursuant to Evidence Code section 1108, evidence of the assault on Jessie in 1991.

III-VIII[***]

IX

Penal Code Section 647.6Annoying or Molesting A Child
At our request, the parties filed supplemental briefs addressing the question whether the trial court erred in failing to give a lesser included offense instruction on annoying and molesting a child in violation of Penal Code section 647.6, subdivision (a).
Defendant contends this offense is a lesser included offense of Penal Code section 288, subdivision (a) under the accusatory pleading test and that failure to give the instruction as requested by counsel was reversible error. Relying on People v. Lopez (1998) 19 Cal.4th 282, 79 Cal.Rptr.2d 195, 965 P.2d 713 (Lopez), the People contend Penal Code section 647.6 is not a lesser included offense of Penal Code section 288 under either the elements or the accusatory pleading test. We conclude the instruction would not have been appropriate.
The trial court has a sua sponte duty to instruct the jury on lesser included offenses "if the evidence `raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense. [Citations.]' [Citations.]" (Lopez, supra, 19 Cal.4th at pp. 287-288, 79 Cal.Rptr.2d 195, 965 P.2d 713.) Stated another way, "`[a] criminal defendant is entitled to an instruction on a lesser included offense only if [citation] "there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense" [citation] but not the lesser. [Citations.]'" (Id. at p. 288, 79 Cal.Rptr.2d 195, 965 P.2d 713, quoting People v. Memro (1995) 11 Cal.4th 786, 871, 47 Cal.Rptr.2d 219, 905 P.2d 1305.)
Two tests are used for determining whether an offense is a lesser included offense, the "elements" test and the "accusatory pleading" test. (Lopez, supra, 19 Cal.4th at p. 288, 79 Cal.Rptr.2d 195, 965 P.2d 713.) Under the elements test, if the greater offense cannot be committed without necessarily satisfying all the elements of the lesser offense, the latter is a necessarily included lesser offense. (Ibid.) Under the "accusatory pleading" test, a lesser offense is included within the greater offense if "the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense." (People v. Birks (1998) 19 Cal.4th 108, 117, 77 Cal. Rptr.2d 848, 960 P.2d 1073; see also Lopez, at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
Penal Code section 288 makes it a felony for any person "who willfully and lewdly commits any lewd or lascivious act ... upon or with the body ... of a child who is under the age of 14 years, with the intent of arousing ... or gratifying the lust, passions, or sexual desires of that person or the child...." This section is violated by any touching of the under-age child if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the child. (Lopez, supra, 19 Cal.4th at p. 289, 79 Cal. Rptr.2d 195, 965 P.2d 713; People v. Martinez, *346 supra, 11 Cal.4th at pp. 450-452, 45 Cal.Rptr.2d 905, 903 P.2d 1037.)
Penal Code section 647.6 defines a misdemeanor offense for "[e]very person who annoys or molests any child under 18 years of age...." A violation of this section does not require a touching (People v. Memro, supra, 11 Cal.4th at p. 871, 47 Cal.Rptr.2d 219, 905 P.2d 1305) but does require "(1) conduct a `"normal person would unhesitatingly be irritated by"' [citations], and (2) conduct `"motivated by an unnatural or abnormal sexual interest"' in the victim." (Lopez, supra, 19 Cal.4th at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The "words `annoy' and `molest' ... are synonymous and generally refer to conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person." (Id. at p. 289, 79 Cal. Rptr.2d 195, 965 P.2d 713.) The words "ordinarily relate to offenses against children, with a connotation of abnormal sexual motivation." (Id. at p. 290, 79 Cal. Rptr.2d 195, 965 P.2d 713.) Because the prohibited conduct relates not to the child's state of mind but to the defendant's objectionable acts, the courts employ an objective test "to determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person." (Ibid.)
Employing these principles, the court in Lopez held that a violation of Penal Code section 647.6 is not a lesser included offense of Penal Code section 288 under the elements test. (Lopez, supra, 19 Cal.4th at p. 292, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The court reasoned that a violation of Penal Code section 288 "requires a touching, even one innocuous or inoffensive on its face, done with lewd intent. [Penal Code] Section 647.6 ... on the other hand, requires an act objectively and unhesitatingly viewed as irritating or disturbing, prompted by an abnormal sexual interest in children." (Id at p. 290, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The court noted that physical affection among relatives is generally considered acceptable conduct, but if it is imposed on an underage child with the requisite lewd intent, such conduct would violate Penal Code section 288. However, the conduct may be objectively inoffensive behavior, which would not violate Penal Code section 647.6. The court therefore concluded the criminal conduct prohibited by Penal Code section 288 could occur without necessarily violating Penal Code section 647.6 because "not every touching with lewd intent will produce the objective irritation or annoyance necessary to violate [Penal Code] section 647.6." (Lopez, supra, at pp. 290-291, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
The court in Lopez also held that Penal Code section 647.6 was not a lesser included offense of Penal Code section 288 under the accusatory pleading test, because the pleading in that case alleged the defendant "`touch[ed][the] victim's vaginal area outside of her underwear' for purposes of his sexual gratification." (Lopez, supra, 19 Cal.4th at p. 293, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The court found that language did not necessarily allege an objectively irritating or annoying act of child molestation because "[a] female child who rides on her father's shoulders might have contact between her vaginal area and her father's neck or shoulders but that contact would not unhesitatingly irritate or disturb a reasonable person." (Id. at p. 294, 79 Cal. Rptr.2d 195, 965 P.2d 713.)
Applying the reasoning of Lopez, we hold that Penal Code section 647.6 is not a lesser included offense of the crimes here alleged.
In count one it was alleged that "defendant touched [the] victim's buttocks with his hand," while in counts two and three it *347 was alleged "defendant grabbed and squeezed [the] victim's buttocks."
The determinative question then is whether the alleged acts of "touching" or "grabbing and squeezing" the victims' buttocks necessarily constitute an objectively irritating or annoying act. In determining whether Penal Code section 647.6 constituted a lesser included offense of Penal Code section 288 under the elements test, the court in Lopez rejected the argument that an objective appraisal of the defendant's conduct would include consideration of his intent. (Lopez, supra, 19 Cal.4th at p. 291, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The same may also be said under the accusatory pleading test, because the same test applies for determining whether the conduct is unhesitatingly annoying and disturbing.
Therefore, disregarding the alleged lewd intent, we consider whether the defendant's act of "touching the] victim's buttock with his hand" is, standing alone, unhesitatingly irritating or annoying. We conclude it is not because it may be the act of a male family member who touches a child's buttocks with his hand in the course of lifting or carrying the child or when encouraging a young child by pushing her forward. Because that touching may appear innocent and inoffensive to a normal observer, the allegation fails to allege conduct necessarily within the definition of Penal Code section 647.6.
Arguably, one may reach the same conclusion with respect to the allegations of grabbing and squeezing the victims' buttocks. There may be circumstances where such an act might not be considered an objectively irritating or annoying act of child molestation as where a parent or a medical practitioner may be called upon to do so in a legitimate effort to tend to a child's needs. In fact, given the test in Lopez, that is, by asking whether there may be a setting where the act of which the defendant is accused is not objectively irritating, most touchings of a child could be accomplished under some circumstances that might not be objectively irritating or annoying.
While we hold that Penal Code section 647.6 was not a lesser included offense in this matter under the accusatory pleading test, an instruction on that offense would not have been appropriate here for another reason as well.
A trial court is required to instruct the jury on a lesser included offense only if there is substantial evidence that, if accepted by the jury, would absolve the defendant of the greater offense, but not the lesser. (People v. Waidla (2000) 22 Cal.4th 690, 733, 94 Cal.Rptr.2d 396, 996 P.2d 46; People v. Memro, supra, 11 Cal.4th at p. 871, 47 Cal.Rptr.2d 219, 905 P.2d 1305.) In this matter, the evidence was overwhelming that defendant intentionally touched, grabbed, and squeezed the buttocks of two young girls he did not know while he was walking around a grocery store. The defense did not present evidence and the prosecution's evidence was such that, under the circumstances, such touchings, if done intentionally as the jury found they were, could only have been done by a person harboring a lewd and lascivious intent. There was no evidence to the contrary for the jury to consider, much less substantial evidence that would absolve the defendant of the greater offense. The fact that he did not flee after these assaults does not change the character of them once the jury concluded he intentionally touched these children in the manner alleged in the complaint. And the fact that he did not flee, but did move his truck so that he had a better view of the entrance of the store, is equally consistent with the thought that he was watching the *348 door for further opportunities to sexually assault young girls.
One may, of course, speculate that defendant acted without a lewd and lascivious intent by imagining scenarios under which acts such as these might have occurred without the required intent. "`But speculation is not evidence, less still substantial evidence.' [Citations.]" (People v. Waidla, supra, 22 Cal.4th at p. 735, 94 Cal.Rptr.2d 396, 996 P.2d 46.) Thus, in the final analysis, there was insufficient evidence to justify an instruction on a lesser offense of violating Penal Code section 647.6, even if such lesser offense had been theoretically available under the accusatory pleading test. There was no error.

DISPOSITION
The judgment is affirmed.
I concur: DAVIS, J.
BLEASE, Acting P.J.
I dissent.
The defendant was convicted of violating Penal Code section 288, subdivision (a), based on charges he touched or grabbed the buttocks of two young girls (10 and 12) while present with their grandmothers in a grocery store.[1] The trial court rejected a defense instruction on the misdemeanor offense of annoying and molesting a minor (§ 647.6, subdivision (a)), as not included within section 288, subdivision (a), and admitted highly inflammatory evidence of a 12-year-old conviction of assault to commit rape (§ 220) upon a 15-year-old.
The trial court refused to give an instruction on the elements of section 647.6, subdivision (a) on the erroneous belief it was not an offense included in section 288, subdivision (a), as charged. The majority opinion, assuming that the conduct alleged and shown at trial could not be understood by the jury as motivated only by an abnormal interest in young children, links the scienters required for the charged and uncharged offenses on the view their mental states are similar and, accordingly, within the trial court's discretion to admit the uncharged offense under Evidence Code sections 1108 and 352. It necessarily reasons the mental state of a 27-year-old man attempting the violent rape of a sexually mature woman in a secluded area is probative of the mental state of a 39year-old man touching the buttocks of two young girls in a public market. This judicial alchemy transforms a putative misdemeanor case carrying a county jail sentence into a felony with a consequent prison sentence of 115 years.[2] The prejudice is manifest.
*349 What the majority opinion fails to see is that the prior conviction for a violent sexual offense (§ 220) was highly likely to lead the jury to believe that it established the mental state required for conviction of section 288, subdivision (a) and to ignore the fact that the sole evidence of the mental state lay in the ambiguous facts of the case. That was amplified by the failure of the court to instruct the jury on the included offense of section 647.6, subdivision (a), which requires a mental state wholly different from 288, subdivision (a).
Evidence Code section 1108 allows the admissibility of a prior sexual offense only "if the evidence is not inadmissible [by] Section 352" and that is the case only if the probative value of the evidence is not outweighed by the probability its admission would create a substantial danger of undue prejudice, of confusing the issues or misleading the jury.
The paramount fact of this case is there is no similarity between the mental state required for conviction of section 220 [assault with intent to commit rape] and that required for conviction of section 647.6, subdivision (a) [annoying and molesting a minor]. Section 220 is a specific intent crime. It requires that the defendant commit the act condemned with the specific intent of gratifying his or the victim's sexual passions. It is forward looking; it is what the perpetrator seeks to accomplish by his act. By contrast, by judicial construction, section 647.6, subdivision (a) requires that the act condemned be motivated by an abnormal sexual interest in young children. The motivation is backward looking. It looks to the sexual interest which induces the act, not the sexual gratification that would be achieved by the act.
There is no evidence the defendant was aroused or sexually gratified by touching the children's buttocks. To the contrary, the evidence shows his escalating acts of annoying conduct were calculated to draw attention to him. Although the section 220 conviction bears on the scienter of section 288, subdivision (a) in that sexual gratification is necessarily involved in an assault with intent to commit rape, it had no probative value as evidence of the defendant's motivation in touching the buttocks of two young girls in the presence of their grandmothers in a public market.
Lastly, the prior conviction would have had no impact on the jury's consideration of the included offenses on which the jury was instructed. Although the prior conviction was probative of the offense of sexual battery (§ 243.4, subd. (e)(1)) for the same reason it was probative of section 288, subdivision (a), the jury could not have found a violation of that offense because the offenses are distinguished by the age of the child and their ages brought them within section 288, subdivision (a). A finding of simple battery (§ 242) would have required the jury to find the defendant had no sexual interest at all in touching the children. Accordingly, the prior conviction pointed unerringly to section 288, subdivision (a).
Having refused to give an instruction on the included offense of section 647.6, subdivision *350 (a), and having admitted evidence of the prior offense of assault to commit rape, the trial court ruled out a jury determination of the only misdemeanor offense the jury could have found on the facts of the case. The prejudice caused thereby, arising from the dramatic difference between limited confinement in the county jail and a century in the state prison, is obvious.
I explain in detail.
FACTUAL BACKGROUND

A. Charged Offenses
The information charged the defendant, inter alia, with "touch[ing Samantha's] buttocks" [count one], with "grabb[ing] and squeezing Samantha's] buttocks" on a second occasion (count two), and with "grabbing] and squeezing Michaela C.'s] buttocks" and the following facts were adduced at trial.
On July 3, 2003, 12-year-old Samantha and her younger sister went with their grandmother, Bonnie Galiotto, to the Safeway store in Paradise. There were very few customers in the store at the time. While the threesome were standing in the card aisle looking for birthday cards, defendant walked past Samantha and slid his hand across her bottom for a second, and then continued walking down the aisle and turned the corner. The only other person standing nearby was at the far end of the aisle and the aisles were wide, so it was not necessary for defendant to be so close to Samantha. Nevertheless, Samantha told her grandmother a man accidentally touched her bottom and her grandmother agreed.
A short time later, while Samantha and her grandmother were in the cake section, defendant walked by them again and this time he grabbed Samantha's bottom. She told her grandmother defendant grabbed her butt and that he had been following her around the store, staring at her. She was shaking and nervous and her voice was quivering. When Samantha saw defendant standing at the checkout counter, she pointed him out to her grandmother, who then pointed her finger at him and said "[d]on't you dare touch my granddaughter." When defendant finished paying for his groceries, he left the store and got into his pickup truck where he sat for about 20 minutes.
Meanwhile, another customer, Nancy Corbett, was in the store with her 10-year-old granddaughter Michaela. While Michaela was standing next to Corbett in one of the aisles, defendant pinched Michaela's buttocks. Nobody else was in the aisle. Michaela told her grandmother that defendant touched her and when Corbett asked her whether it was an accident, the child started to cry and said "No, grandma, it wasn't an accident. He grabbed my butt." Corbett saw defendant who was at the end of the aisle by then. She followed him so she could see what he looked like and what he was doing and continued to follow him until she saw him leave the store.
While Corbett and Michaela were on their way to the checkout counter, Corbett overheard Galiotto telling the store manager about the incident involving Samantha. After asking Galiotto whether her granddaughter had been touched too, Corbett told the manager what happened to Michaela.
As they exited the store, Corbett and Michaela saw defendant sitting in his truck in the parking lot. Before leaving the lot, Corbett drove past defendant's truck and Michaela wrote down the license plate number and a description of his truck. Corbett then saw defendant move his truck to another area in the parking lot where he could view the store entrance, so *351 she returned to the store with Michaela and called the police.
When the police arrived, defendant was still sitting in his truck. Officer Rowe asked him why he was still there and defendant explained that he went to buy briquettes for a barbeque and was checking his receipt to determine if he had enough money in his ATM account to make another purchase. However, he did not Have a receipt in his hand and took some time to finally locate it in his wallet. The receipt had no information showing defendant's account balance. When the officer asked defendant about the reported touchings, he denied they happened, but said that if he did touch anyone, it was an accident because it was very busy inside.
Meanwhile, Officer Gallagher took Samantha and Michaela outside where each one independently identified defendant as the man who touched her. Defendant was arrested and taken into custody.

B. Uncharged Offense
On the morning of May 31, 1991, when Jessie D. was 15 years old, she was walking alone on a trail on her way to the high school. As she walked through some bushes to a paved bike path, she saw defendant on the path. She walked behind him for a short distance and he kept looking back at her. When she left the path, he took another trail and fell in behind her. As she was about to cross a dry creek bed, he ran up behind her, grabbed her, and lifted her off the ground. He put his hand over her mouth and using "an evil, mean" tone, told her to "shut up" and then pushed her to the ground face down. As she struggled, her glasses and the rocks on the ground scratched her face.
Although defendant was sitting on her, she was able to turn over, but her legs were caught in the bushes, which scraped her legs whenever she moved them. Meanwhile, defendant was trying to unbuckle her belt. Believing he was going to rape her, Jessie decided to fight back and started to scream and hit him. He repeatedly told her to shut up and unsuccessfully attempted to control her flailing arms. When he grabbed her breast, she became enraged and hit him harder. He finally fled and she was able to run to the school where she reported the attack. Defendant pled guilty to a charge of assault with intent to commit rape (§ 220) and was sentenced to state prison for this attack.
The defense rested without presenting any evidence.

I.

The Trial Court Prejudicially Refused to Give a Requested Instruction on the Lesser Included Offense of Annoying or Molesting A Child (§ 647.6, subd. (a))
The trial court prejudicially refused to give an instruction requested by the defense on section 647.6, subdivision (a), an offense included within section 288, subdivision (a) by virtue of the facts alleged in the accusatory pleading.
The trial court has a sua sponte duty to instruct the jury on lesser included offenses "if the evidence `raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense. [Citations.]' [Citations.]" (People v. Lopez (1998) 19 Cal.4th 282, 287-288, 79 Cal.Rptr.2d 195, 965 P.2d 713 (Lopez).)

A. Section 647.6, subdivision (a) Is Included Within Counts Two & Three
Two tests are used for determining whether an offense is a lesser-included offense, the "elements" test and the "accusatory *352 pleading" test. (Lopez, supra, 19 Cal.4th at p. 288, 79 Cal.Rptr.2d 195, 965 P.2d 713.) Section 647.6, subdivision (a) is not included within section 288, subdivision (a) under the "elements" test. (Id. at p. 292, 79 Cal.Rptr.2d 195, 965 P.2d 713.) It is included as to counts two and three, under the "accusatory pleading" test, because "the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense...." (People v. Birks (1998) 19 Cal.4th 108, 117, 77 Cal. Rptr.2d 848, 960 P.2d 1073; Lopez, supra, 19 Cal.4th at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
Section 288, subdivision (a) makes it a felony to "willfully and lewdly commit[] any lewd or lascivious act ... upon or with the body ... of a child who is under the age of 14 years, with the intent of arousing ... or gratifying the lust, passions, or sexual desires of that person or the child...." The section is violated by any touching of the child if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the child. (Lopez, supra, 19 Cal.4th at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d 713; People v. Martinez (1995) 11 Cal.4th 434, 450-452, 45 Cal.Rptr.2d 905, 903 P.2d 1037.)
Section 647.6, subdivision (a) makes it a misdemeanor to "annoy[] or molest[] any child under the age of 18...." A violation of this section does not require a touching (People v. Memro (1995) 11 Cal.4th 786, 871, 47 Cal.Rptr.2d 219, 905 P.2d 1305) but does require "(1) conduct a `"normal person would unhesitatingly be irritated by"' [citations], and (2) conduct `"motivated by an unnatural or abnormal sexual interest"' in the victim [Citations]." (Lopez, supra, 19 Cal.4th at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The "words `annoy' and `molest' ... are synonymous and generally refer to conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person." (Lopez, supra, 19 Cal.4th at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The words "ordinarily relate to offenses against children, with a connotation of abnormal sexual motivation." (Id. at p. 290, 79 Cal.Rptr.2d 195, 965 P.2d 713.) Because the prohibited conduct relates not to the child's state of mind but to the defendant's objectionable acts, the courts employ an objective test "to determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person...." (Ibid.) However, the objective test does not "include consideration of [the perpetrator's] intent," implying that the motivation must be separately proved. (Id. at p. 291, 79 Cal.Rptr.2d 195, 965 P.2d 713.)[3]
The court in Lopez held that section 647.6, subdivision (a) was not a lesser included offense of section 288, subdivision (a) under the accusatory pleading test because the pleading in that case alleged that the defendant "`touch[ed][the] victim's vaginal area outside of her underwear' for purposes of his sexual gratification." (Lopez, supra, 19 Cal.4th at p. 293, 79 Cal. Rptr.2d 195, 965 P.2d 713.) The court found the language did not necessarily allege an objectively irritating or annoying act of child molestation because "[a] female *353 child who rides on her father's shoulders might have contact between her vaginal area and her father's neck or shoulders, but that contact would not unhesitatingly irritate or disturb a reasonable person.'" (Id. at pp. 293-294, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
The determinative question then is whether the alleged acts of "touching" or "grabbing and squeezing" the victims' buttocks necessarily constitute an objectively irritating or annoying act. In determining whether section 647.6, subdivision (a) constituted a lesser included offense of section 288, subdivision (a) under the "elements" test, the court in Lopez rejected the argument that an objective appraisal of the defendant's conduct would include consideration of his intent. (Lopez, supra, 19 Cal.4th at p. 291, 79 Cal.Rptr.2d 195, 965 P.2d 713.) The same may also be said under the accusatory pleading test because the same test applies for determining whether the conduct is unhesitatingly annoying and disturbing.
Therefore, disregarding the alleged lewd intent, we must consider whether "touching the victim's buttock with his hand" is unhesitatingly irritating or annoying. I conclude it is not as to count one because it may include a male family member who touches a child's buttocks in the course of lifting or carrying the child or when encouraging a young child by pushing her forward. Because that touching may appear innocent and inoffensive to a normal observer, the allegation fails to allege conduct necessarily within the definition of section 647.6, subdivision (a).
I reach a contrary conclusion with respect to the allegations of grabbing and squeezing the victims' buttocks. Those acts are unlike the touchings in Lopez where the contact between the child's vaginal area and her father's neck or shoulders necessarily occurs from the child's position on her father's shoulders and is in a sense inadvertent. They also are unlike touching a child's buttocks with one's hand, or the touching alleged in Lopez, either of which may be viewed as acceptable conduct when done by a family member under the circumstances described. When a family member grabs and squeezes the buttocks of a female child, he or she can reasonably expect a loud protest from the child. That the act is done in play (which bears on the perpetrator's intent), does hot alter the conclusion such a touching would be objectively irritating or disturbing to a 10- or 12-year-old child. I therefore conclude a violation of section 647.6, subdivision (a) is a lesser included offense of section 288, subdivision (a) as alleged in counts two and three of the information.[4]
Respondent argues however, that the trial court had no duty to give the instruction because there was no evidence other than an unexplained rejection of the prosecution's evidence the offense was less than that charged. I disagree.
The respondent misses the point in applying the rule that a trial court is required to instruct the jury on a lesser included offense only if there is substantial evidence which, if accepted by the jury would absolve the defendant of the greater offense, but not the lesser. It concludes that the defense failed to present evidence, *354 and the prosecution's evidence was such that the touchings, if done intentionally, as the jury found, could only have been done by a person harboring a lewd and lascivious intent.
This conclusion assumes away what is at issue in determining whether the claimed included offense instruction should have been given. The question is, could the jury on the basis of the evidence have concluded that it was done by a person harboring a lewd and lascivious intent.[5] On that point any fair view of the charge given the jury and the evidence taken, would conclude that at the least, the evidence is ambiguous, a matter clearly for the jury and not this court to resolve.
While it is true defendant did not dispute the prosecution's evidence, as he argued and I find, the evidence of lewd intent was ambiguous. Under that circumstance, the trial court was required to give an instruction on the lesser included offense. (People v. Kraft (2000) 23 Cal.4th 978, 1063, 99 Cal.Rptr.2d 1, 5 P.3d 68; People v. Birks, supra, 19 Cal.4th at p. 118, 77 Cal.Rptr.2d 848, 960 P.2d 1073.)
Nevertheless, the majority equates the specific intent specified under section 288, subdivision (a) with the general intent required under section 647.6, subdivision (a) and concludes that once a touching of an under-age child occurs, section 288, subdivision (a) is violated.
The purpose of section 288, subdivision (a) is to protect young children from sexual exploitation. (People v. Martinez, supra, 11 Cal.4th at p. 443, 45 Cal.Rptr.2d 905, 903 P.2d 1037.) "The statute recognizes that children are `uniquely susceptible' to such abuse as a result of their dependence upon adults, smaller size, and relative naivete. [Citation.]" (Id. at p. 444, 45 Cal. Rptr.2d 905, 903 P.2d 1037.) To that end, the statutory language specifies that the section is violated by a touching done with the specific intent to obtain sexual arousal or gratification.
By contrast, the purpose of section 647.6, subdivision (a) is to protect children from interference by sexual offenders (People v. Lopez, supra, 19 Cal.4th at p. 290, 79 Cal.Rptr.2d 195, 965 P.2d 713; In re Gladys R. (1970) 1 Cal.3d 855, 868, 83 Cal.Rptr. 671, 464 P.2d 127 [construing former section 647a]) and the statute does not specify the requisite mental state. That element was articulated by the court in People v. Pallares (1952) 246 P.2d 173, 112 Cal.App.2d Supp. 895, when it rejected a due process claim the words "annoys or molests" were impermissibly vague. The court explained that "[w]hen [these words] are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children." (Id. at p. 901, 246 P.2d 173.) This construction has been uniformly accepted by the courts. (In re Gladys R., supra, 1 Cal.3d at pp. 867-868, 83 Cal. Rptr. 671, 464 P.2d 127; Lopez, supra, 19 Cal.4th at p. 290, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
Because section 647.6, subdivision (a) does not require a touching (People v. Memro, supra, 11 Cal.4th at p. 871, 47 Cal.Rptr.2d 219, 905 P.2d 1305),) most of the published cases construing it involve prosecutions where there was no touching. (See People v. Britt (2002) 104 Cal.App.4th *355 500, 502-504, 128 Cal.Rptr.2d 290; People v. Thompson (1988) 206 Cal.App.3d 459, 461-62, 253 Cal.Rptr. 564; In re Sheridan (1964) 230 Cal.App.2d 365, 370-371, 40 Cal.Rptr. 894; People v. McNair (1955) 130 Cal.App.2d 696, 697, 279 P.2d 800.) Nevertheless, the section may be violated by touching a child in an irritating or annoying manner with the requisite intent. (See People v. McFarland (2000) 78 Cal. App.4th 489, 491-92, 92 Cal.Rptr.2d 884 [defendant stroked a young child's arm and face]; People v. Moore (1955) 137 Cal.App.2d 197, 202, 290 P.2d 40 [defendant lifted the child and placed his hand on her buttocks].)
The majority opinion cannot ignore the statutory differences between section 647.6, subdivision (a) which states a misdemeanor, and section 288, subdivision (a) which states a felony subject to enhancements and three strike punishments that may result in draconian punishment. Since section 288, subdivision (a) includes any touching no matter how innocuous (Lopez, supra, 19 Cal.4th at p. 290, 79 Cal.Rptr.2d 195, 965 P.2d 713), where there is a touching, the question as to which statute is violated must necessarily turn on the defendant's intent, and as I have shown, the mental state required by the two sections are not equivalent. The mere fact a defendant touched a child cannot be said to transform the touching into a violation of section 288, subdivision (a) as a matter of law unless it can also be said the touching was overtly sexual. This is not a case where the victims were alone and vulnerable to sexual exploitation by defendant. Accordingly, because in my view squeezing or grabbing the buttocks of a 10- or 12-year-old child in a public place does not necessarily establish anything more than an intent to annoy the child as a result of an abnormal sexual interest in the child, I conclude that defendant was entitled to an instruction on section 647.6, subdivision (a) to resolve the question of intent.
Applying the reasoning of Lopez, it is apparent that section 647.6, subdivision (a) is not a lesser included offense of the crime alleged in count one but is a lesser included offense of the crimes alleged in counts two and three. As noted, count one alleged the "defendant touched [the] victim's buttocks with his hand," while in counts two and three it was alleged he "grabbed and squeezed [the] victim's buttocks." It is readily apparent that in the latter counts, unlike Lopez, the grabbing and squeezing the buttocks of a young child is an objectively irritating or annoying contact with the child and hence an offense included within 288, subdivision (a).

B. The Failure to Instruct on Section 647.6, subdivision (a) Was Prejudicial
I next consider whether this error requires reversal under the state's harmless error standard (People v. Breverman (1998) 19 Cal.4th 142, 165, 77 Cal.Rptr.2d 870, 960 P.2d 1094; People v. Watson (1956) 46 Cal.2d 818, 835, 299 P.2d 243) and find that the instructional error combined with the evidentiary error discussed in Part I requires reversal.
As I found in Part I, the central issue in this case was whether defendant acted with lewd intent, which requires proof he touched the girls to obtain immediate sexual arousal or gratification. (People v. Martinez, supra, 11 Cal.4th at pp. 444, 452, 45 Cal.Rptr.2d 905, 903 P.2d 1037.) Given the state of the evidence, the instructions gave the jury an all or nothing choice, i.e. either convict or acquit defendant of violating section 288, subdivision (a). The jury was given an instruction on section 288, subdivision (a) and on the two lesser included offenses of misdemeanor *356 battery (§ 242) and misdemeanor sexual battery. (§ 243.4, subd. (e)(1).)[6] However, the intent described in section 288, subdivision (a) is essentially the same intent described in section 243.4, subdivision (e)(1). Both offenses include the intent to gratify the perpetrator's sexual desires and as alleged, both include touching the victims' buttocks. (§ 243.4, subd. (g)(1).) On the evidence in this case, the only significant difference between the two offenses is the age of the child. Section 288, subdivision (a) requires that the child be under the age of 14 years. Section 243.4 has no age requirement.
The age of the victims was not in dispute nor was the fact defendant touched the girls' buttocks. Thus, if the jury found the evidence sufficient to establish a sexual battery, it also would have found the evidence sufficient to establish a violation of section 288, subdivision (a). Since the prohibited acts conveyed some possible sexual motivation, particularly in light of the prior uncharged offense and counsels' closing arguments, the jury necessarily would have found defendant guilty of the greater offense rather than either lesser offense.
In sum, the erroneous admission of evidence of the uncharged attempted rape filled the evidentiary gap as to defendant's lewd intent. Failing to instruct on the offense of molesting and annoying a child (§ 647.6, subd. (a)) effectively withdrew from the jury's consideration an alternative that fully accounted for all the evidence. The cumulative effect of these two errors was to lead the jury to convict defendant of violating section 288, subdivision (a) although it is reasonably probable it would have reached a different verdict on counts two and three in the absence of these errors.

II.

The Trial Court Admitted a Highly Inflammatory Prior Conviction (§ 220) Likely to Mislead and Confuse The Jury on the Key Mental State Issue
The People moved to admit the evidence of the uncharged offense under Evidence Code sections 1101, subdivision (b) to show intent and under section 1108 to show propensity to commit sexual assaults. The court denied the motion under Evidence Code section 1101, subdivision (b), finding the uncharged and charged offenses are not sufficiently similar, but granted the motion under Evidence Code section 1108 although it "recognize[d] the possible prejudice" of the uncharged offense. Although *357 the trial court's findings are accurate, it failed to take heed of its findings and properly apply them.
The trial court admitted evidence under Evidence Code section 1108 of the defendant's 12-year-old conviction under section 220 of a violent attempted rape of a 15-year-old to show propensity to commit sexual assault. But that propensity says nothing about the defendant's mental state in touching the buttocks of two young girls while present with their grandmothers in a grocery store.

A. Evidence Code Section 1108
Evidence Code section 1108 authorizes the admission of a prior sexual offense only if its admission meets the factual tests of Evidence Code section 352.[7] Evidence Code section 352 grants the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. In Falsetto, supra, 21 Cal.4th 903, 89 Cal.Rptr.2d 847, 986 P.2d 182, the Supreme Court upheld Evidence Code section 1108 against a due process challenge concluding that Evidence Code section 352 provides a sufficient "`safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial.'" (Id. at p. 917, 89 Cal.Rptr.2d 847, 986 P.2d 182, quoting People v. Fitch (1997) 55 Cal. App.4th 172, 183, 63 Cal.Rptr.2d 753.) In so holding, the court reviewed the legislative history, noting that Evidence Code section 1108 was intended "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (Id. at p. 911, 89 Cal.Rptr.2d 847, 986 P.2d 182.) The court took note of the Legislature's determination that "`the need for this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial.'" (Ibid.) Based upon this history, the court concluded "the Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (Id. at p. 915, 89 Cal.Rptr.2d 847, 986 P.2d 182.)
While propensity evidence is no longer deemed unduly prejudicial per se, to avoid undue prejudice, the trial court "must engage in a careful weighing process under section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, *358 the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (Falsetto, supra, 21 Cal.4th at p. 917, 89 Cal. Rptr.2d 847, 986 P.2d 182.)
As the court explained in People v. Balcorn (1994) 7 Cal.4th 414 at page 427, 27 Cal.Rptr.2d 666, 867 P.2d 777 and repeated in Falsetto, supra, 21 Cal.4th at page 917, 89 Cal.Rptr.2d 847, 986 P.2d 182, "the probative value of `other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense."
I review the trial court's ruling for abuse of discretion (People v. Frazier (2001) 89 Cal.App.4th 30, 42, 107 Cal.Rptr.2d 100), which must be exercised impartially according to fixed legal principles, in conformity with the spirit of the law, and in a manner that serves rather than impedes or defeats the ends of substantial justice. (People v. Harris (1998) 60 Cal.App.4th 727, 736-737, 70 Cal.Rptr.2d 689.) The prejudice or damage to be avoided is not that which naturally flows from relevant, highly probative evidence, but from evidence that "`"tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.'"" (People v. Smith (2005) 35 Cal.4th 334, 357, 25 Cal.Rptr.3d 554, 107 P.3d 229, quoting People v. Karis (1988) 46 Cal.3d 612, 638, 250 Cal.Rptr. 659, 758 P.2d 1189, italics omitted.)

B. Evidence Code section 352
Under Evidence Code section 352,1 first consider whether the uncharged act was probative of a violation of section 288, subdivision (a) and then weigh the strength of its probative value against the countervailing factors affecting its prejudicial effect.
Evidence Code section 1108 admits evidence of prior offenses for any relevant purpose. (People v. James (2000) 81 Cal. App.4th 1343, 1353, fn. 7, 96 Cal.Rptr.2d 823; People v. Britt, supra, 104 Cal. App.4th at p. 505, 128 Cal.Rptr.2d 290.) Relevant evidence, which includes evidence relevant to the credibility of a witness, is evidence that has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.)
Here the evidence was relevant, if at all, to prove propensity to engage in sexual conduct. The Legislature's principle justification for enacting Evidence Code section 1108 was to assist juries in making difficult credibility determinations because sex offenses are usually committed in seclusion without other witnesses. (Falsetto, supra, 21 Cal.4th at pp. 911-912, 89 Cal.Rptr.2d 847, 986 P.2d 182.) That justification is completely inapplicable here because the charged acts were committed in a public place in plain view of other witnesses. While defendant told the officer he did not touch the little girls, he did not take the stand or present any evidence at trial, and did not seriously dispute the prosecution's evidence that he touched the girls as alleged.
The real issue in dispute was whether defendant acted with the specific "intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of either himself or the child. (§ 288, subd. (a).)
*359 To prove this, the People must establish beyond a reasonable doubt that defendant touched the two little girls with the intent to obtain immediate sexual arousal or gratification. (People v. Martinez, supra, 11 Cal.4th at p. 452, 45 Cal.Rptr.2d 905, 903 P.2d 1037; People v. Mickle, supra, 54 Cal.3d at p. 176, 284 Cal.Rptr. 511, 814 P.2d 290.) The manner and circumstances of the charged act are highly relevant in making that determination. (People v. Martinez, supra, at pp. 445, 452, 45 Cal. Rptr.2d 905, 903 P.2d 1037.) Other relevant factors may include "the defendant's extrajudicial statements [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection [citation]." (People v. Martinez, supra, at p. 445, 45 Cal.Rptr.2d 905, 903 P.2d 1037.)
When offered to prove intent, the relevancy of a prior uncharged act depends on its similarity to the charged offense. While a lesser degree of similarity between the charged and uncharged offense is required to prove intent than to prove identity or plan, its relevance nevertheless arises from "`the recurrence of a similar resultf, which] ... tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act....' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant `"probably harbor[ed] the same intent in each instance." [Citations.]'" (People v. Eivoldt (1994) 7 Cal.4th 380, 402, 27 Cal. Rptr.2d 646, 867 P.2d 757, superseded on other grounds.)
I therefore consider the manner, nature, and circumstances of the charged and uncharged offenses and their similarity to each other to determine whether the assault on Jessie D. was relevant to prove defendant touched Samantha and Michaela with lewd intent.[8] The complaining witnesses were pre-pubescent girls. Each child described being touched, grabbed, or pinched on her bottom by a man as he passed her in a grocery store aisle while she was standing next to her grandmother. Neither offense was violent and by the standards of most prosecutions brought under section 288, subdivision (a), the touchings were comparatively mild. While they were inappropriate and offensive, none of the three touchings involved substantial sexual conduct (§ 1203.066, subd. (b) [defining "[substantial sexual conduct" as "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender"]), nor did they involve force, coercion, duress, or violence of any kind. Neither child was particularly vulnerable and there was almost no likelihood the incidents would have escalated.
By contrast, the uncharged offense was committed on a sexually mature 15-year-old high school student.[9] Defendant attacked her by lifting her up and wrestling her to the ground. He then attempted to remove her clothing and grabbed her *360 breast with the intent to rape her. The attack occurred in an isolated area, while the victim was alone, and in all probability, the rape would have been accomplished had the victim not successfully fought off defendant.
In sum, the uncharged offense was overtly sexual while the charged offenses involved touchings that were sexually ambiguous and did not by themselves readily permit an inference of sexual intent. Indeed, the touchings could just as reasonably be viewed as acts intended to annoy or harass the young girls (see § 647.6, subd. (a) [annoying or molesting a child under the age of 18]) rather than to obtain immediate sexual gratification. That the touchings were committed in a public place within view of third persons and that defendant sat in his truck knowing at least one of his victims had identified him after alerting her grandmother, further support an inference the charged acts were not committed with lewd intent. Nor are any other relevant circumstances present such as physical or verbal evidence of arousal, coercion, bribery, deceit, or extra-judicial statements. (People v. Martinez, supra, 11 Cal.4th at pp. 447, 453, 45 Cal.Rptr.2d 905, 903 P.2d 1037.)
The majority characterizes the charged and uncharged offenses as sexual assaults on girls in their early to mid teens, showing that defendant has an aberrant sexual interest in young girls. By classifying the offenses in such broad and general language, the majority ignores the factors required to determine probative value, namely the specific facts and nature of the involved offenses. By classifying the victims as "girls in their early to mid teens," the majority ignores the significant biological and resulting sexual differences between a pre-pubescent 12-year-old girl and a sexually mature 15-year-old high school student and the impact those differences would have on a 27-year-old male.
Because the similarities between the charged and uncharged offenses are few and of little consequence while the dissimilarities are numerous and significant, the uncharged offense does not support an inference defendant harbored the same intent in each instance or that he harbored a lewd intent as to the charged offenses. (People v. Ewoldt, supra, 7 Cal.4th at p. 402, 27 Cal.Rptr.2d 646, 867 P.2d 757.) I would find the probative value of the uncharged offense is very weak to prove lewd intent.
Moreover, the prejudicial effect of the uncharged crime substantially outweighed its probative value. As to the first factor, evidence of the uncharged act was considerably more inflammatory than the charged acts because it was overtly sexual and violent. As a result, there was a possibility Jessie D.'s testimony could evoke an emotional bias against defendant as an individual. (People v. Smith, supra, 35 Cal.4th at p. 357, 25 Cal.Rptr.3d 554, 107 P.3d 229; People v. Coddington (2000) 23 Cal.4th 529, 587, 97 Cal.Rptr.2d 528, 2 P.3d 1081, overruled on other grounds in Price v. Superior Court (2001) 25 Cal.4th 1046, 1069, fn. 13, 108 Cal.Rptr.2d 409, 25 P.3d 618.)
The probative value of the uncharged offense is also diminished by its remoteness to the charged offenses. (Falsetto, supra, 21 Cal.4th at p. 917, 89 Cal.Rptr.2d 847, 986 P.2d 182.) "Remoteness of prior offenses relates to `the question of predisposition to commit the charged sexual offenses.' " (People v. Branch (2001) 91 Cal. App.4th 274, 285, 109 Cal.Rptr.2d 870, quoting People v. Harris, supra, 60 Cal. App.4th at p. 739, 70 Cal.Rptr.2d 689.) Here, the uncharged offense was committed approximately 12 years before the charged offense. Respondent argues that *361 the prior offense is not remote given the substantial amount of time defendant spent in prison serving a prison term and parole violation[10] prior to committing the charged offenses. (People v. Soto (1998) 64 Cal.App.4th 966, 991-992, 75 Cal. Rptr.2d 605.) While that argument may be persuasive in some cases, it misses the point here.
Although defendant did not live a legally blameless life in the interim period, as I have discussed, the intervening 12 years are significant because they bear on his age when he committed the uncharged and charged offenses, which in turn bears on his predisposition to commit the charged offense. Defendant was 39 years old when he committed the charged offenses and 27 years old when he committed the uncharged offense and it reasonably can be said that the intent of a 27-year-old male who commits an assault with the intent to rape a sexually mature teenage girl is decidedly different than the intent of a 39year-old male who touches the clothed buttocks of a pre-pubescent child in a public place while she is in the presence of her grandmother. Defendant has no prior convictions for committing sexual offenses against children under the age of 14 years. Thus, the prior offense does not raise a reasonable inference that defendant has a predisposition to commit the latter offenses with the same sexual intent. This factor also weighs in favor of exclusion. As to the remaining factors, evidence defendant pled guilty to the uncharged offense and was sentenced to prison for that offense eliminated the possibility of any prejudice resulting from the uncertainty of its commission, or from misleading, confusing, or distracting the jury from its main inquiry. This factor therefore weighs in favor of admission.
However, as stated, the probative value of the evidence was weak, it was not similar to the charged offenses in any significant way, although it was considerably more inflammatory than the charged offenses, and it was remote. Because the charged acts were not overtly sexual in nature and the evidence of defendant's sexual intent was based primarily if not solely on the evidence of the uncharged offense, I conclude the probative value of the uncharged offense was substantially outweighed by the probability its admission would create substantial danger of undue prejudice. The trial court therefore abused its discretion by admitting the evidence.
Reversal for evidentiary error is required only when, upon an examination of the entire record, there is a reasonable probability the error affected the jury's verdict. (People v. Coddington, supra, 23 Cal.4th at p. 587, 97 Cal.Rptr.2d 528, 2 P.3d 1081; People v. Watson, supra, 46 Cal.2d at p. 835, 299 P.2d 243.) I find the error was prejudicial.
The central issue in this case was whether defendant acted with lewd intent, which requires proof he touched the girls to obtain immediate sexual gratification. (People v. Martinez, supra, 11 Cal.4th at p. 452, 45 Cal.Rptr.2d 905, 903 P.2d 1037.) The charged acts, standing alone, were ambiguous, requiring the jury to consider other evidence to resolve that issue. However, the relevant circumstances surrounding the touchings do not readily support a finding of lewd intent. Apart from the uncharged offense, there was no independent physical or testimonial evidence that defendant was sexually aroused or gratified *362 by touching the victims as he did and his only extrajudicial statement was to deny the touching allegations and claim they were accidental.
Indeed, the facts give rise to an equally reasonable inference defendant was trying to annoy the girls given the public nature of the acts. Failing to elicit a response from Samantha after he touched her the first time, defendant returned and touched her again but with more force. When she failed to protest the second time, he chose another victim and pinched her buttocks. The touchings therefore escalated from a potentially innocuous or accidental touching to more forceful and annoying touchings, which demonstrated an intent to annoy the girls and attract attention. This inference is strengthened by defendant's subsequent behavior when he stood at the checkout counter staring at Samantha and Galiotto, her grandmother. After Galiotto publicly warned defendant not to touch Samantha, defendant paid for his groceries, calmly walked out of the store, and sat in his truck for approximately 20 minutes until Michaela and her grandmother drove by. He then moved his truck to a spot in front of the store entrance where he waited for the police.
Under these circumstances, although defendant demonstrated a consciousness of guilt when he told the officer he did not touch the girls, the question still remained, guilty of what, lewd and lascivious acts (§ 288, subd. (a)), a battery (§ 242), a sexual battery (§ 243.4), or annoying and molesting a child. (§ 647.6, subd.(a).)[11]
The only other evidence offered to show lewd intent was the uncharged offense of assault with the intent to commit rape, which clearly involved an intent to obtain immediate sexual gratification. Moreover, because the victim of the uncharged offense testified and went into considerable detail describing the events leading up to and including the attack, her testimony played a significant role in the case. That significance was underscored by the prosecutor in her closing argument. Defense counsel argued that the touching, while inappropriate, only amounted to a sexual battery. In response, the prosecutor asked "[w]hat other reasonable explanation is there for him doing this, other than he's trying to satisfy his sexual desires in grabbing their bottoms? This is a defendant who has a propensity to commit sexual offenses, a propensity to commit sexual offenses. There is no other reasonable explanation." (Italics added.)[12]
Defendant's lewd intent was further emphasized by defense counsel who told the jury in closing argument that "every one of us would be offended by the fact that a stranger grabbed your child's or your granddaughter's bottom. [¶] I have a[n] 11 year old daughter. And frankly, if someone did that to my daughter, I would be extremely pissed off and very revengeful, etc." This statement was made in the context of counsel's argument that defendant was guilty of something but not of the offenses charged. While his intention may have been to gain credibility with the jury, his personal expression of outrage had the effect of further emphasizing the lewd and abhorrent nature of the touchings.
*363 Citing People v. Harris, supra, 60 Cal. App.4th 727, 70 Cal.Rptr.2d 689 as an example of prejudicial error, respondent argues that unlike in Harris, here the 1991 attempted rape of Jessie D. was not especially inflammatory. I disagree. The defendant in Harris was a mental health nurse charged with nonviolent sexual assaults on vulnerable women in his charge in a mental health facility. (Id. at pp. 730-733, 70 Cal.Rptr.2d 689.) Evidence was also admitted that 23 years prior, defendant had broken into a woman's home and sexually assaulted her in an extremely brutal and violent manner, leaving her torn, bleeding and unconscious. (Id. at pp. 733-735, 70 Cal.Rptr.2d 689.) The court found the evidence inflammatory in the extreme because the charged acts involved breaches of trust of two emotionally and physically vulnerable women while the uncharged act was a violent and perverse attack on a stranger. It concluded that the evidence was prejudicial because it was remote, inflammatory, and nearly irrelevant. (Id. at p. 741, 70 Cal.Rptr.2d 689.)
Likewise, as I have concluded, the attack on Jessie D. was remote, inflammatory, and nearly irrelevant to the pivotal issue of defendant's intent. Although the offense against Jessie D. was not as violent as the uncharged act in Harris, it was far more sexual and brutal than the charged pffenses.
Accordingly, because the uncharged offense was the only evidence to fill the evidentiary gap on the issue of intent, I would conclude it is reasonably probable the jury would have returned a different verdict had the evidence been excluded. I would reverse the judgment and remand the case to the trial court to retry the defendant, excluding the admissibility of the prior conviction for assault with intent to commit rape (§ 220) and on instructions that include the offense of section 647.6, subdivision (a).
In summary, the evidentiary and instructional errors prejudicially affected the jury's verdict on count one as well. Although there was no actual instructional error as to that count, as discussed above, admission of the uncharged offense was prejudicial as to all three counts. Even respondent argues in his supplemental brief that the evidence of the attempted rape was "most telling" regarding defendant's intent. Indeed, the prejudicial effect of this evidence was at its strongest as to count one because the evidence of defendant's intent on this count was at its weakest given the innocuous nature of the touching and the victim's testimony she and her grandmother both thought it was an accident.
The prejudicial effect of the evidence on count one cannot be viewed apart from the jury's verdicts on the other two counts because all three offenses occurred at the same time and place and under the same set of circumstances. Once the jury found defendant acted with the requisite intent as to one count, it would have found he acted with the same intent as to all counts. Accordingly, I conclude there is a reasonable probability the jury's verdict on count one would have been different in the absence of the errors.
I would reverse the convictions and remand the case to the trial court for retrial.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, the majority and dissenting opinion should be published in the Official Reports with the exception of parts I and III through VIII of the majority opinion and it is so ordered.
[**] See footnote *, ante.
[***] See footnote *, ante.
[1] All references to undesignated sections are to the Penal Code.
[2] Defendant Jeffrey Allen Isom was sentenced to a prison term of 115 years for touching the buttocks of two young girls in a grocery store as he passed by. Had the girls been over the age of 14 years, the touchings could only have been charged as misdemeanors. (See §§ 242 [battery]; 243.4, subd. (e)(1) [sexual battery]; 647.6, subd. (a) [annoying and molesting a minor under the age of 18 years].)

Since both girls were 10 and 12 years old respectively at the time of the offense, defendant was charged and convicted of committing three counts of lewd and lascivious acts upon a child under the age of 14 years. (§ 288, subd. (a).) The jury found true the multiple victim enhancement allegation as to each count (§ 667.61, subd. (b)[15 years to life]) and defendant admitted the truth of two prior "strike" convictions. (§§ 1170.12, subds.(a)-(d) and 667, subds. (b)-(i).) The trial court imposed three consecutive terms of imprisonment in accordance with the three strikes law for a total term of 115 years to life. (Ibid.) A person convicted of violating section 288, subdivision (a) against more than one victim is punishable with a term of imprisonment of 15 years to life. (§ 667.61, subds.(b), (c)(4), and (e)(5).) Under the three strikes law, a person convicted of a felony who has been convicted of two prior serious or violent felonies, as defendant had, is punishable with an indeterminate prison term of life imprisonment. The minimum term of the indeterminate sentence is calculated as the greater of three times the term otherwise provided as punishment, or imprisonment for 25 years. (§§ 667, subd. (e)(2)(A)(i) and (ii), 1170.12, subd. (c)(2)(i) and (ii).)
The trial court imposed three consecutive terms as follows: Count one, 45 years to life (three times 15 to life); count two, 25 years to life; and count three, 45 years to life (three times 15 to life). The court struck the multi-victim allegation as to count two, finding counts one and two were committed on the same occasion.
[3] The pattern instruction on section 647.6, subdivision (a) provides in pertinent part: "To prove that the defendant is guilty of this crime, the People must prove that: 1. The defendant engaged in conduct directed at a child; 2. A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; 3. The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; [and] 4. The child was under the age of 18 years at the time of the conduct.

"[I]t is not necessary that the child actually be irritated or disturbed.] [It is [also] not necessary that the child actually be touched.] (CALCRIM No. 1122 (Jan.2006 ed.).)
[4] This result will invariably appear illogical to the jury, which will be instructed under section 647.6, subdivision (a) as to the more offensive acts alleged in counts two and three while receiving no such instruction on count one for the less offensive act. This result is unavoidable however, in view of the Supreme Court's decision in Lopez, which requires that we evaluate the irritating and annoying nature of the defendant's conduct in the abstract and without regard to his intent. (Lopez, supra, 19 Cal.4th at p. 291, 79 Cal.Rptr.2d 195, 965 P.2d 713.)
[5] By lewd and lascivious we mean motivated by an unnatural sexual interest in children.
[6] Battery is "any willful and unlawful use of force or violence upon the person of another." (§ 242.) The offense of sexual battery prescribes "[a]ny person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse ...." (§ 243.4, subd. (e)(1).) Intimate part includes the buttocks of any person. (§ 243.4, subd. (g)(1).)

These two offenses are lesser included offenses under the accusatory pleading test only. Battery cannot be accomplished unless the defendant touches the victim (People v. Marshall (1997) 15 Cal.4th 1, 38, 61 Cal. Rptr.2d 84, 931 P.2d 262) while section 288, subdivision (a) does not require that the defendant touch the victim and may be accomplished by directing the victim to touch herself. (See People v. Mickle (1991) 54 Cal.3d 140, 175-176, 284 Cal.Rptr. 511, 814 P.2d 290.) Sexual battery on the other hand, requires that the defendant touch an intimate part of the victim (§ 243.4, subd. (e)(1)) while section 288, subdivision (a) may be violated by any touching however innocuous. (People v. Martinez, supra, 11 Cal.4th at pp. 450-452, 45 Cal.Rptr.2d 905, 903 P.2d 1037.) However, because the information alleged that defendant violated section 288, subdivision (a) by touching the victims' buttocks, it stated a violation of section 288, subdivision (a) that necessarily includes battery and sexual battery.
[7] Evidence Code section 1108, subdivision (a), provides an exception to the general rule of Evidence Code section 1101 by allowing propensity evidence in sex offense cases. (People v. Falsetta (1999) 21 Cal.4th 903, 907, 89 Cal.Rptr.2d 847, 986 P.2d 182 (Falsetta).) Evidence Code section 1108 states that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Thus, section 1108 on its face posits only the bare minimum or abstract probative value involved in the categorization of the offenses as sexual offenses. The actual probative value is determined by analysis of the facts of the case pursuant to Evidence Code section 352.
[8] At trial, defendant did not argue that any of the touchings were accidental.
[9] The majority opinion takes issue with the characterization sexually mature. However, historically 14 years marked the age of puberty when a female became sexually mature. (People v. Toliver (1969) 270 Cal.App.2d 492, 496, 75 Cal.Rptr. 819.) Section 288, subdivision (a) is consistent with that precedent.
[10] The probation report indicates that defendant was sentenced to prison for 11 years and was returned to custody in 1999 for a parole violation. He was probably free of custody for about three years before he committed the instant offenses.
[11] The jury was instructed on battery and sexual battery and given verdict forms for these two offenses.
[12] Apparently the jury agreed with the prosecutor, since it was excused to deliberate at 12:00 p.m. and returned with its verdict at 3:45 p.m. Presumably the jury had lunch during that period. Thus, despite what appears to this court to be a close question as to defendant's intent, the jury members ate lunch and resolved that question in just under four hours.